SARAH R. HACOBIAN, ESQ. (SBN 340443)
SRH Law Group, APC
440 Western Ave. Suite 205
Glendale, CA 91201
Telephone: (818) 669-8522
SRHlawgroup@outlook.com
Attorney for Petitioner

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ARTUR ISHKHANYAN,**<br><br>**Petitioner,**<br><br>**v.**<br><br>**PAM BONDI, Attorney General of the United States; B. A. SEMAIA, Acting Field Office Director, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; CALEB VITELLO, Acting Director, U.S. Immigration and Customs Enforcement; and MARKWAYNE MULLINS, Secretary, Department of Homeland Security**<br><br>**Respondents.** | Case No.:<br><br>**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241** |

## I. INTRODUCTION

1. Petitioner **Artur Ishkhanyan** respectfully petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and the Due Process Clause of the

Fifth Amendment and seeks his immediate release from immigration detention under appropriate conditions of supervision.

2. This is Petitioner's second habeas petition, but it is not an attempt to obtain reconsideration of the Court's prior ruling on the same factual record. The material circumstance upon which the Court's prior decision rested has now changed.

3. Petitioner was transferred directly from federal criminal custody to the custody of Immigration and Customs Enforcement ("ICE") on **June 18, 2026**, after completing approximately eighteen years in federal custody.

4. Petitioner previously challenged that detention in *Ishkhanyan v. Bondi, et al.*, Case No. 5:26-cv-04118-BFM (C.D. Cal.).

5. On August 3, 2026, the Court denied that petition because Petitioner's detention remained within the mandatory 90-day removal period prescribed by 8 U.S.C. § 1231(a)(1)-(2). The Court reasoned that the removal period commenced upon Petitioner's June 18, 2026 release from federal criminal custody.

6. Critically, the Court did **not** foreclose a later challenge to Petitioner's continuing detention. Instead, it expressly denied the Petition "without prejudice to the claims being renewed should Petitioner's detention become

prolonged." *Ishkhanyan v. Bondi*, No. 5:26-cv-04118-BFM, Dkt. 11 at 4 (C.D. Cal. Aug. 3, 2026). A copy of that Order is attached as **Exhibit B**.

7. That expressly contemplated change in circumstances has now occurred. The 90-day mandatory removal period upon which the prior decision rested has expired. Petitioner remains incarcerated. He has not been removed. No travel document has been issued. No concrete removal date has been identified to Petitioner. And, to Petitioner's knowledge, there has been no material progress demonstrating that Russia will recognize Petitioner as a Russian citizen, issue him travel documents, or accept his removal.

8. Petitioner has not obstructed the removal process. He has done the opposite.

9. While detained, Petitioner independently attempted to facilitate the Government's efforts. On July 15, 2026, Petitioner wrote Russian authorities asking whether ICE had requested travel documents, requesting verification of whether Russia considers him a Russian citizen, and expressly offering to provide whatever assistance was necessary to determine whether Russia would admit him.

10. Petitioner sent correspondence to Russian authorities by certified mail. He has also attempted repeatedly—dozens of times—to contact Russian consular authorities by telephone from Adelanto.

11. Despite those affirmative efforts, Petitioner has received no meaningful response establishing that Russia recognizes him as a citizen or will issue the documentation necessary for his removal. Petitioner's July 15, 2026 correspondence and the certified-mail documentation corroborating his efforts are attached collectively as **Exhibit C**.

12. These circumstances are particularly significant because Petitioner left the former Soviet Union as a **six-year-old child in 1979**, entered the United States lawfully with his family, subsequently became a lawful permanent resident, has lived essentially his entire life in this country, and represents that he has never possessed a Russian passport.

13. Recent federal decisions addressing removal to Russia confirm that these circumstances warrant meaningful judicial scrutiny. In *Lapshin v. Bondi*, No. C25-2245-KKE, 2026 WL 71407, at *2–4 (W.D. Wash. Jan. 9, 2026), the district court concluded that generalized assertions that ICE was "actively working" to obtain Russian travel documents did not establish that removal was reasonably foreseeable where the record did not demonstrate meaningful engagement or progress by Russia. The court ordered the petitioner's release.

14. Other courts have likewise relied upon evidence that the United States Government has classified Russia as an **"uncooperative"** country for removal purposes when evaluating whether removal to Russia is reasonably foreseeable.

See, e.g., *Magomedov v. Bondi*, No. C26-521, 2026 WL 747102, at *2 (W.D. Wash. Mar. 17, 2026); see also *Savinskiy v. Bondi*, No. 2:26-cv-00835-JHC, Dkt. 14 at 10–11 (W.D. Wash. 2026) (discussing Russia's history of being uncooperative in effectuating removals and collecting similar Russian-removal cases).

15. This Petition therefore presents the Court with circumstances fundamentally different from those existing when the first petition was decided. The Government has now received the statutory removal period upon which it relied. Petitioner has affirmatively cooperated. Yet Petitioner remains incarcerated without demonstrated progress toward the actual objective that purportedly justifies his confinement.

16. In addition, Petitioner renews his independent procedural due-process challenge. Before his federal incarceration, Petitioner had previously been granted release from immigration detention following an individualized immigration custody determination. The Government thereafter knew precisely where Petitioner was throughout his federal criminal proceedings and approximately eighteen years of incarceration.

17. Nevertheless, when Petitioner's criminal sentence ended, ICE immediately took him into civil immigration custody without providing meaningful advance

notice or an individualized pre-deprivation determination that circumstances required the revocation of his previously recognized liberty.

18. Since the prior petition was decided, decisions within this District have continued to recognize that post-removal-order detention under § 1231 does not extinguish the protections of the Fifth Amendment and that immediate release may be appropriate where continued or renewed detention violates those protections.

19. Most significantly, in *Manoukyan v. Lyons*, No. 5:26-cv-00524-SPG-AJR, Dkt. 19 (C.D. Cal. Mar. 4, 2026), the Court considered both § 1231(a)(6) and the Fifth Amendment, ultimately ordering the petitioner's release. A copy is attached as **Exhibit D**.

20. Petitioner accordingly seeks the traditional remedy of habeas corpus: release from unlawful custody, subject to reasonable conditions of supervision.

## II. JURISDICTION

21. This Court has jurisdiction pursuant to 28 U.S.C. § 2241 because Petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

22. Federal district courts retain habeas jurisdiction over challenges to the legality of immigration detention that are independent of a challenge to the validity of

the underlying removal order. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Singh v. Holder*, 638 F.3d 1196, 1211 (9th Cir. 2011).

23. Indeed, in **Exhibit D**, *Manoukyan*, the Central District specifically rejected a jurisdictional challenge under 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9), explaining that § 1252(b)(9) does not "preclude habeas review over challenges to detention that are independent of challenges to removal orders." *Manoukyan*, No. 5:26-cv-00524-SPG-AJR, Dkt. 19 at 8 (quoting *Singh*, 638 F.3d at 1211).

24. Petitioner does not ask this Court to vacate or review the merits of his underlying removal order. He challenges the legality of his **present physical detention**.

25. Accordingly, this Court possesses jurisdiction over this Petition.

## III. VENUE

26. Venue is proper in the Central District of California because Petitioner is presently detained at the Adelanto ICE Processing Center within this District and his immediate custodian is located within this District.

## IV. PARTIES

27. Petitioner **ARTUR ISHKHANYAN** is a 53-year-old individual presently detained by ICE at the Adelanto ICE Processing Center.

28. Respondent **TODD M. LYONS** is the Acting Director of ICE and is sued in his official capacity.

29. Respondent **KRISTI NOEM** is the Secretary of the Department of Homeland Security and is sued in her official capacity.

30. Respondent **FIELD OFFICE DIRECTOR, ICE ENFORCEMENT AND REMOVAL OPERATIONS, LOS ANGELES FIELD OFFICE**, exercises authority over Petitioner's detention and custody.

31. Respondent **WARDEN OF THE ADELANTO ICE PROCESSING CENTER** is Petitioner's immediate physical custodian.

## V. FACTUAL BACKGROUND

### A. Petitioner Has Lived in the United States Since He Was Six Years Old.

32. Petitioner was born on January 29, 1973, in the former Soviet Union.

33. In 1979, when Petitioner was approximately six years old, he lawfully entered the United States with his family.

34. Petitioner subsequently obtained lawful permanent resident status.

35. Petitioner has therefore lived in the United States for approximately 47 years and was raised almost entirely in this country.

36. Petitioner's immediate family and meaningful ties are in the United States. He has two adult United States citizen daughters, both of whom are nursing students.

37. Petitioner's parents reside in the family home where Petitioner lived for more than twelve years, and his sister has resided in that household for more than twenty-five years.

38. Petitioner represents that he has no meaningful ties to Russia and has never possessed a Russian passport.

**B. Petitioner Was Previously Released From Immigration Custody Following an Individualized Custody Determination.**

39. Approximately two decades ago, Petitioner was detained in immigration custody in Philadelphia.

40. Petitioner received an individualized immigration custody determination and was granted immigration bond.

41. Petitioner was thereafter released into the community.

42. The Government thus previously determined that Petitioner's detention was not necessary at that time and restored him to liberty.

**C. Petitioner Subsequently Served a Lengthy Federal Criminal Sentence.**

43. Petitioner later became involved in federal criminal proceedings.

44. Petitioner remained on federal pretrial release for approximately two years before beginning his custodial sentence.

45. In or around June 2008, Petitioner entered federal custody.

46. Petitioner ultimately remained in federal custody for approximately eighteen years.

47. Petitioner acknowledges his criminal history. He does not ask this Court to disregard it.

48. However, Petitioner's underlying federal offense was nonviolent, and Petitioner states that during his lengthy incarceration he maintained clear institutional conduct and was classified by federal authorities as presenting a low risk of recidivism.

49. Petitioner further represents that his conduct and classification made him eligible for earlier transition toward community placement, including lower-security/community programming, but that the existence of the ICE detainer prevented him from receiving the full benefit of that transition.

50. Thus, Petitioner's liberty deprivation did not simply begin when ICE took physical custody on June 18, 2026. The immigration detainer had already

affected the manner in which Petitioner could transition from federal custody back into the community.

51. Petitioner completed his federal sentence and was released from Bureau of Prisons custody on June 18, 2026.

52. Instead of returning home to his family, Petitioner was immediately transferred into ICE custody.

53. Petitioner has remained in immigration detention ever since.

**D. Petitioner Remains Subject to Significant Federal Supervision Upon Release.**

54. Petitioner's release from ICE detention would not place him into the community without governmental oversight.

55. Petitioner represents that he remains subject to approximately five years of federal supervision.

56. Violation of the conditions of that supervision carries serious consequences, including potential arrest and return to federal custody.

57. That independent federal supervision substantially reduces any asserted risk that Petitioner would abscond.

58. Petitioner's extraordinary family ties further reduce any asserted flight risk. His daughters, parents, sister, and long-established home and community are in the United States.

59. Nor does Petitioner's present record establish that civil incarceration is necessary to protect the community. Petitioner served his criminal sentence, maintained institutional conduct that he represents resulted in favorable classification and early-release benefits, and will remain under federal supervision.

## VI. THE PRIOR HABEAS PROCEEDING

60. Petitioner previously filed a petition for writ of habeas corpus in *Artur Ishkhanyan v. Pam Bondi, et al.*, Case No. 5:26-cv-04118-BFM.

61. The Government's principal statutory response was straightforward: Petitioner's June 18, 2026 transfer from federal custody triggered the statutory 90-day removal period, and Petitioner had then been detained for only approximately 42 days.

62. The Government argued that Petitioner's detention remained mandatory under § 1231(a)(2) because the 90-day period had not expired. In its own words, Petitioner had been detained "42 days, which is well within the 90-day mandatory detention period."

63. The Government further acknowledged that § 1231(a)(6) permits detention after the removal period only subject to the limitations recognized in *Zadvydas*.

64. On August 3, 2026, the Court denied the first petition. See **Exhibit B**, *Ishkhanyan v. Bondi*, No. 5:26-cv-04118-BFM, Dkt. 11 (C.D. Cal. Aug. 3, 2026).

65. The Court determined that Petitioner's 90-day removal period began when he was released from federal criminal custody on June 18, 2026, and that detention during that period was mandatory.

66. The Court also found that, at that early stage, Petitioner's detention was substantially shorter than the presumptively reasonable period discussed in *Zadvydas*.

67. But the Court deliberately did not foreclose a future challenge. It concluded:

> "Accordingly, the Petition is denied, without prejudice to the claims being renewed should Petitioner's detention become prolonged." **Exhibit B**, *Ishkhanyan*, Dkt. 11 at 4.

68. The present Petition takes the Court at its word.

69. Petitioner does not ask this Court to reconsider whether detention was statutorily mandatory during the initial 90-day period.

70. Instead, Petitioner asks the Court to evaluate his **continued detention after the expiration of the statutory period**, based upon facts that did not exist when the Court adjudicated the first petition.

## VII. MATERIAL CIRCUMSTANCES HAVE CHANGED SINCE THE PRIOR JUDGMENT

71. The prior judgment rested substantially upon the fact that Petitioner was still within the mandatory removal period.

72. That period has now ended.

73. Petitioner remains incarcerated.

74. No Russian travel document has been issued to Petitioner.

75. No concrete removal date has been identified to Petitioner.

76. Petitioner has received no information demonstrating that Russia has verified him as a citizen or agreed to accept him.

77. To Petitioner's knowledge, the Government has not demonstrated any concrete development showing that his removal to Russia is imminent or reasonably foreseeable.

78. Meanwhile, Petitioner himself has affirmatively attempted to move the process forward.

**A. Petitioner Personally Attempted to Obtain Information and Assist the Removal Process.**

79. On July 15, 2026—while the Government still possessed substantial time within the 90-day removal period—Petitioner wrote Russian authorities concerning his status.

80. In that correspondence, Petitioner explained that he had been transferred to ICE custody following completion of his federal sentence and that his removal order designated Russia.

81. Petitioner specifically asked whether ICE had requested travel documents on his behalf or attempted to verify whether he is considered a Russian citizen.

82. Petitioner explained that continued detention would be prolonged if ICE and Russian authorities did not communicate concerning citizenship and travel documentation.

83. Most importantly, Petitioner affirmatively offered his cooperation, explaining that if there was anything he could do to assist Russian authorities in determining whether he could be admitted to Russia, he would do so.

84. Petitioner also explained that he had never possessed a Russian passport and had arrived in the United States as a six-year-old child.

85. Petitioner sent correspondence by certified mail. The letter and certified-mail materials are attached collectively as **Exhibit C**.

86. Petitioner also attempted to call Russian consular authorities dozens of times from Adelanto.

87. Those efforts have not produced a meaningful response or travel documentation.

88. Petitioner's conduct therefore cannot reasonably be characterized as obstruction. He has affirmatively attempted to assist in accomplishing the very objective that Respondents invoke to justify his continued detention.

## VIII. LEGAL STANDARD GOVERNING POST-REMOVAL-ORDER DETENTION

89. Under 8 U.S.C. § 1231(a)(1), the Government ordinarily must accomplish removal during a 90-day statutory removal period.

90. During that period, detention is mandatory under § 1231(a)(2).

91. The statutory regime changes after the removal period expires.

92. Section 1231(a)(3) provides for supervision of persons who have not been removed during the removal period.

93. Section 1231(a)(6) permits continued detention of certain categories of noncitizens after the removal period, but that authority is not unlimited.

94. In *Zadvydas v. Davis*, 533 U.S. 678, 689–701 (2001), the Supreme Court construed § 1231(a)(6) to avoid the serious constitutional problem that would result from indefinite civil immigration detention.

95. The Supreme Court held that § 1231(a)(6) contains an implicit limitation permitting detention only for a period reasonably necessary to accomplish removal. *Id.* at 689, 699–700.

96. As *Zadvydas* explained, where removal is not reasonably foreseeable, continued detention no longer serves the statute's basic purpose of ensuring the noncitizen's presence at removal. *Id.* at 699–700.

97. *Zadvydas* established six months as a **presumptively reasonable** period, but it did not hold that six months constitutes an absolute jurisdictional or ripeness barrier to every challenge filed earlier.

98. That distinction is particularly important here.

## IX. CENTRAL DISTRICT AUTHORITY CONFIRMS THAT SIX MONTHS IS A PRESUMPTION, NOT A CATEGORICAL BAR

99. In **Exhibit D**, *Manoukyan v. Lyons*, No. 5:26-cv-00524-SPG-AJR, Dkt. 19 (C.D. Cal. Mar. 4, 2026), the Court directly addressed this issue in the context of § 1231(a)(6).

100. The *Manoukyan* court acknowledged that some courts of appeals outside the Ninth Circuit have treated six months as a categorical threshold. But it emphasized that **the Ninth Circuit has not adopted that rule**. Id. at 10.

101. The Court then identified a series of Central District decisions concluding that *Zadvydas* does **not** establish a categorical prohibition against challenging § 1231(a)(6) detention before six months, including *Hanna v. Santacruz*, No. 5:26-cv-00267-ODW (KSx), 2026 WL 242029, at *3 (C.D. Cal. Jan. 29, 2026); *Burunsuzyan v. Noem*, No. 5:26-cv-00049-RGK-AGR, 2026 WL 246067, at *5 (C.D. Cal. Jan. 27, 2026); *Abramian v. Bondi*, No. ED CV 25-3080-DMG (SPx), 2026 WL 166907, at *5 (C.D. Cal. Jan. 16, 2026); and *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1093 (C.D. Cal. 2020). **Exhibit D at 10.**

102. A copy of the *Burunsuzyan* order is separately attached as **Exhibit F**.

103. Most importantly, *Manoukyan* explained that the six-month presumption **"is not a prohibition on claims challenging detention less than six months." Exhibit D at 11.**

104. Instead, the governing inquiry remains the one prescribed by *Zadvydas*: whether detention has exceeded a period reasonably necessary to accomplish removal and whether removal is reasonably foreseeable. *Id.*

105. That reasoning directly addresses the anticipated contention that Petitioner's renewed challenge must automatically fail merely because his present ICE detention has not yet reached six months.

106. Petitioner's position is not that passage of the 90th day mechanically compels release in every case.

107. Petitioner's position is that the **reason the prior Court declined relief has expired**, detention is no longer within the mandatory 90-day period, and the actual facts now known concerning the likelihood and progress of removal warrant review under § 1231(a)(6), *Zadvydas*, and the Fifth Amendment.

## X. THE PRESENT RECORD PROVIDES CONCRETE REASON TO QUESTION WHETHER REMOVAL TO RUSSIA IS REASONABLY FORESEEABLE

108. Petitioner's circumstances are not based upon speculation alone.

109. Petitioner came to the United States from the former Soviet Union in 1979 when he was six.

110. He represents that he has never possessed a Russian passport.

111. He has now attempted personally to obtain confirmation from Russian authorities that Russia recognizes him as a citizen or will issue travel documentation.

112. Those attempts have produced no meaningful result.

113. The Government has had the entire statutory removal period following Petitioner's release from criminal custody.

114. Yet Petitioner remains detained without an identified travel document or concrete removal date.

115. Recent federal decisions involving removal to Russia reinforce the significance of these circumstances.

116. In *Lapshin v. Bondi*, No. C25-2245-KKE, 2026 WL 71407, at *2–4 (W.D. Wash. Jan. 9, 2026), the court addressed prolonged detention of a Russian national while ICE attempted to obtain Russian travel documentation.

117. The Government argued in *Lapshin* that ICE was actively working to obtain a travel document and that Russia had engaged in document requests. The Court concluded that those representations were insufficient on the record before it because they did not establish meaningful Russian engagement concerning that petitioner's travel document.

118. The court emphasized that evidence that Russia had issued documents in other cases did not establish the likelihood of removal of the particular petitioner before it. *Id.* at *3–4.

119. The court ultimately ordered Lapshin released under § 1231. *Id.* at *4–5.

120. Similarly, *Magomedov v. Bondi*, No. C26-521, 2026 WL 747102, at *2 (W.D. Wash. Mar. 17, 2026), relied in part upon a November 2024 ICE publication classifying Russia as "uncooperative" and describing that classification as applicable to countries that hinder removal efforts through such conduct as delaying travel documents, refusing consular interviews, or failing to accept removal missions.

121. More recent authority has recognized the same Russia-specific difficulty. See *Savinskiy v. Bondi*, No. 2:26-cv-00835-JHC, Dkt. 14 at 10–11 (W.D. Wash. 2026) (discussing *Magomedov* and *Lapshin* and finding that evidence regarding Russia's lack of cooperation, combined with the absence of convincing evidence of a prospect of removal, supported relief).

122. Petitioner recognizes that the petitioners in some of those cases had been detained longer than he has. He does not suggest otherwise.

123. Those cases nevertheless bear directly on the factual question at issue here: whether generalized assurances that ICE is pursuing Russian travel

documentation necessarily demonstrate a significant likelihood of actual removal in the reasonably foreseeable future.

124. Here, there is an additional circumstance: Petitioner himself attempted to obtain verification and cooperation from Russia and received no meaningful result. **See Exhibit C.**

125. Thus, this is not a case in which a detainee has refused to cooperate and then invoked the resulting delay as a basis for release.

126. Petitioner has attempted to assist.

127. Continued incarceration cannot be justified indefinitely by the abstract possibility that travel documentation may someday issue. The statutory purpose is to effectuate removal—not detention for detention's sake.

## XI. PETITIONER'S RE-DETENTION ALSO VIOLATED PROCEDURAL DUE PROCESS

128. Petitioner's post-90-day claim is an additional ground for relief. It does not extinguish the independent procedural due-process violation that occurred when ICE re-detained him.

129. The Fifth Amendment protects persons from deprivation of liberty without due process of law.

130. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas*, 533 U.S. at 690.

131. The appropriate procedural framework is supplied by *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), which considers: (1) the private interest affected; (2) the risk of erroneous deprivation and probable value of additional safeguards; and (3) the Government's interest and burden associated with additional process.

**A. Petitioner's Liberty Interest Is Substantial.**

132. Petitioner's liberty interest is substantial.

133. He had previously been released from immigration custody following an individualized immigration custody determination.

134. The Government then knew precisely where he was throughout his criminal prosecution and approximately eighteen years of federal incarceration.

135. His whereabouts were not unknown.

136. There was no need for a surprise seizure to prevent him from disappearing.

137. And following release, Petitioner would remain subject to significant federal supervision.

138. **Exhibit D, Manoukyan**, is particularly instructive. There, the Court recognized that persons previously released from immigration custody possess a substantial liberty interest in continued release and emphasized that freedom from physical restraint lies at the heart of due process. *Manoukyan*, Dkt. 19 at 13–14.

**B. The Lack of Pre-Deprivation Process Created a Serious Risk of Erroneous Deprivation.**

139. The risk of erroneous deprivation was substantial because Petitioner received no meaningful pre-deprivation procedure to determine whether detention was actually necessary.

140. The Government had years to provide notice and an opportunity to be heard. It knew the precise date on which Petitioner's federal sentence would end.

141. There was no emergency created by an unexpected encounter with Petitioner.

142. In **Exhibit D**, the Court emphasized that "[t]he right to prior notice and a hearing is central to the Constitution's command of due process." *Manoukyan*, Dkt. 19 at 14 (quoting *United States v. James Daniel Good Real Property*, 510 U.S. 43, 53 (1993)).

143. The Court further recognized the traditional rule that an opportunity for a hearing ordinarily must be provided before the deprivation occurs. **Exhibit D at 14.**

144. Petitioner's circumstances presented ample opportunity for such process.

**C. The Government's Interest Does Not Justify Dispensing With Process.**

145. Petitioner recognizes the Government's legitimate interests in effectuating final removal orders, protecting the public, and preventing flight.

146. But those interests do not answer the constitutional question.

147. Petitioner had previously been granted immigration release.

148. He then remained on federal pretrial release for an extended period before his criminal incarceration.

149. He remained continuously locatable during approximately eighteen years in federal custody.

150. He will remain subject to federal supervision upon release.

151. He has extensive family ties in this District and no meaningful community ties to Russia.

152. He has affirmatively attempted to cooperate with Russian authorities.

153. The Government therefore could have provided meaningful process without sacrificing its legitimate interests.

154. *Manoukyan* is again instructive. Although the Government invoked its general interest in preventing flight and protecting the public, the Court found those generalized interests insufficient where the record did not demonstrate that either justification actually required continued detention. **Exhibit D at 15–16.**

155. The same individualized inquiry is warranted here.

## XII. RELEASE UNDER SUPERVISION IS AN AVAILABLE AND APPROPRIATE REMEDY

156. Habeas corpus exists to remedy unlawful physical custody. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

157. Petitioner therefore seeks **release**, not merely an additional post-deprivation hearing after months of detention.

158. The Central District has recently ordered precisely that form of relief in comparable immigration detention cases.

159. In **Exhibit D, Manoukyan**, after analyzing both § 1231(a)(6) and procedural due process, the Court ordered the petitioner released under the conditions of his prior order of supervision and prohibited re-detention except

as permitted by the applicable regulations. *Manoukyan*, No. 5:26-cv-00524-SPG-AJR, Dkt. 19 at 17.

160. That remedy is especially significant because *Manoukyan* involved a petitioner subject to a final removal order and detention governed by § 1231—the statutory scheme directly relevant here.

161. **Exhibit E, Long Thanh Ly v. D. Marin**, No. ED CV 26-2485-SSS(E), Dkt. 12 (C.D. Cal. July 14, 2026), provides another recent example.

162. In *Long Thanh Ly*, the petitioner had previously been released from immigration detention under supervision and was subsequently re-detained. The Magistrate Judge recommended immediate release, and the District Court adopted that recommendation and entered judgment ordering the Government to **"release Petitioner ... from detention immediately, subject to the previous conditions of supervision." Exhibit E at 1.**

163. Petitioner acknowledges that the Government did not substantively oppose the petition in *Long Thanh Ly*, and therefore does not present that decision as resolving every contested legal issue here.

164. It nevertheless demonstrates that immediate release under conditions of supervision is a recognized and administrable habeas remedy within this

District for an individual with a removal order who had previously lived under supervision.

165. **Exhibit F, Burunsuzyan v. Noem**, No. 5:26-cv-00049-RGK-AGR, 2026 WL 246067 (C.D. Cal. Jan. 27, 2026), further supports Petitioner's position that *Zadvydas*' six-month presumption does not operate as an absolute prohibition against earlier judicial review of § 1231(a)(6) detention. See also **Exhibit D at 10–11** (expressly relying on *Burunsuzyan* for that proposition).

166. These authorities do not establish that every detained person with a final removal order must be released after 90 days. Petitioner does not ask the Court to adopt such a rule.

167. They establish something more tailored and directly relevant: **the expiration of the mandatory removal period matters; § 1231(a)(6) detention remains subject to judicial review; six months is a presumption rather than a categorical bar in the decisions of this District; due process continues to constrain civil detention; and immediate release under supervision is an available remedy.**

## XIII. PETITIONER DOES NOT PRESENT A FLIGHT RISK WARRANTING CONTINUED PHYSICAL DETENTION

168. Even if Respondents attempt to justify continued detention based upon flight risk, the individualized facts strongly weigh against that conclusion.

169. Petitioner has lived in the United States since age six.

170. His two adult daughters are United States citizens.

171. His parents and sister are established here.

172. His family home is here.

173. Petitioner represents that he has no meaningful ties to Russia.

174. Most importantly, Petitioner will remain under approximately five years of federal supervision upon release.

175. Violating federal supervision exposes Petitioner to serious consequences, including potential return to custody.

176. That supervision supplies a substantial independent mechanism to ensure Petitioner's compliance.

177. Petitioner's conduct concerning the Russian Consulate likewise undermines any suggestion that he intends to evade immigration authorities. A person seeking to disappear would have little reason to send certified correspondence to the very foreign authorities whose cooperation ICE requires to effectuate his removal.

178. Petitioner did so because he wants the uncertainty resolved.

## XIV. CONTINUED DETENTION IS NOT NECESSARY TO PROTECT THE COMMUNITY

179. Petitioner's criminal history is serious and is not concealed from this Court.

180. But civil immigration detention is not an additional criminal sentence.

181. Petitioner has completed the federal custodial sentence imposed for his criminal conduct.

182. He states that during federal custody he maintained clear conduct, was classified as presenting a low risk of recidivism, and obtained early-release benefits based upon his institutional conduct.

183. Petitioner further states that, but for the ICE detainer, he would have been eligible for transition through lower-security or community-based placement.

184. Upon release, he will remain subject to federal supervision.

185. These circumstances are relevant to any individualized contention that Petitioner presently must remain physically incarcerated to protect the public.

186. At minimum, they demonstrate why generalized reliance on Petitioner's decades-old conviction cannot substitute for an individualized determination of present necessity.

## XV. PETITIONER HAS NOT FAILED TO COOPERATE WITH REMOVAL

187. Section 1231 contains provisions addressing circumstances in which a person acts to prevent removal.

188. No such circumstance exists here.

189. Petitioner has not refused to complete necessary paperwork identified to him.

190. He has not concealed his identity.

191. He has not refused to communicate with Russian authorities.

192. Instead, Petitioner sent written correspondence, used certified mail, repeatedly attempted telephone contact, requested citizenship verification, asked whether ICE had sought travel documentation, and affirmatively offered his assistance. **See Exhibit C.**

193. Accordingly, any delay attributable to Russia, travel-document processing, or agency administration should not be attributed to Petitioner.

## XVI. CLAIM ONE

**CONTINUED DETENTION UNDER 8 U.S.C. § 1231(a)(6) IS NO LONGER REASONABLY RELATED TO THE PURPOSE OF EFFECTUATING REMOVAL**

194. Petitioner realleges paragraphs 1 through 200.

195. Petitioner's mandatory 90-day removal period has expired.

196. Continued detention is therefore governed by the post-removal-period framework, including § 1231(a)(6) as construed by *Zadvydas*.

197. Section 1231(a)(6) does not authorize indefinite detention divorced from a reasonably foreseeable prospect of removal.

198. Petitioner has remained continuously detained since June 18, 2026.

199. The Government has not removed him during the statutory removal period.

200. Petitioner has not received a Russian travel document.

201. Petitioner has not been provided a concrete removal date.

202. Petitioner himself has unsuccessfully attempted to obtain Russian citizenship/travel-document information and has offered his assistance.

203. Russia's documented history of difficulty or lack of cooperation in effectuating removals further bears on the foreseeability inquiry.

204. Under the particular circumstances presented, continued physical detention is no longer reasonably justified merely by invoking the possibility of future removal.

205. Petitioner is entitled to habeas relief.

## XVII. CLAIM TWO

## PETITIONER'S RE-DETENTION AND CONTINUED DETENTION VIOLATE THE FIFTH AMENDMENT'S PROCEDURAL DUE PROCESS GUARANTEE

206. Petitioner realleges paragraphs 1 through 212.

207. Petitioner possessed a substantial liberty interest arising from his prior immigration release and his freedom from unnecessary physical restraint.

208. Respondents knew Petitioner's whereabouts for years.

209. Respondents had ample opportunity to provide advance notice and an individualized determination concerning whether detention was necessary.

210. Respondents nevertheless took Petitioner directly from federal custody into civil immigration detention without meaningful pre-deprivation process.

211. The absence of such process created a substantial risk of erroneous deprivation.

212. Less restrictive measures—including supervision—were and remain readily available.

213. Continued detention resulting from that constitutionally deficient deprivation violates the Fifth Amendment.

## XVIII. CLAIM THREE

## CONTINUED DETENTION VIOLATES SUBSTANTIVE DUE PROCESS WHERE IT IS NOT REASONABLY RELATED TO ITS CIVIL PURPOSE

214. Petitioner realleges paragraphs 1 through 220.

215. Immigration detention is civil rather than punitive.

216. Its legitimate purpose in Petitioner's circumstances is to facilitate removal and, where supported by individualized facts, address genuine concerns such as flight or danger.

217. Once detention ceases to bear a reasonable relationship to those purposes, continued confinement raises serious constitutional concerns.

218. Here, the statutory removal period has expired without removal.

219. No concrete removal date or completed travel documentation has been identified.

220. Petitioner has affirmatively cooperated.

221. Petitioner is subject to substantial federal supervision upon release and has extensive family and community ties.

222. Continued incarceration under these circumstances imposes an extraordinary deprivation of liberty without a correspondingly demonstrated civil necessity.

## XIX. THIS PETITION IS NOT BARRED BY THE PRIOR JUDGMENT

223. The first habeas petition was expressly denied **without prejudice**.

224. More importantly, the Court specifically contemplated renewal if Petitioner's detention became prolonged. **Exhibit B at 4.**

225. The present Petition rests upon material events occurring after the first petition was filed and adjudicated.

226. The first Court considered Petitioner's detention while it remained within the statutory 90-day mandatory period.

227. The present Court is asked to consider continued detention after that statutory period has expired.

228. The first record did not include the present passage of time, the Government's inability to effectuate removal during the entire statutory period, or the completed record of Petitioner's unsuccessful attempts to obtain assistance from Russian authorities.

229. Indeed, in the prior proceeding Petitioner expressly did **not** contend that he had already established a *Zadvydas* claim based upon the absence of reasonably foreseeable removal because that factual claim had not yet matured.

230. The present Petition therefore does not merely repeat a claim adjudicated on unchanged facts. It presents the renewed challenge the prior Court expressly preserved.

## XX. A POST-DEPRIVATION BOND HEARING DOES NOT CURE THE CONSTITUTIONAL VIOLATION

156. Respondents may contend that, even if Petitioner's re-detention occurred without constitutionally adequate process, the appropriate remedy is merely to provide Petitioner with a bond or custody hearing now. That position fails to address the nature of Petitioner's constitutional claim.

157. Petitioner's claim concerns the **deprivation that already occurred**: ICE took Petitioner from a previously recognized state of immigration liberty and placed him back into physical civil detention without first providing meaningful notice or an individualized opportunity to contest whether renewed detention was warranted.

158. A hearing conducted only **after** the Government has already deprived Petitioner of his liberty does not place Petitioner in the position he occupied

before the unconstitutional deprivation. Nor does it supply the pre-deprivation safeguard that was omitted.

159. The distinction between pre-deprivation and post-deprivation process is fundamental. As the Court explained in *Manoukyan*, "[t]he right to prior notice and a hearing is central to the Constitution's command of due process." *Manoukyan v. Lyons*, No. 5:26-cv-00524-SPG-AJR, Dkt. 19 at 14 (C.D. Cal. Mar. 4, 2026) (quoting *United States v. James Daniel Good Real Property*, 510 U.S. 43, 53 (1993)). **See Ex. D at 14.**

160. *Manoukyan* further recognized the traditional constitutional rule that, absent extraordinary circumstances, the opportunity to be heard ordinarily must occur **before the deprivation takes effect**. **See Ex. D at 14.**

161. The same principle was applied in **E.A.T. v. Wamsley**, where the court rejected the proposition that a later bond hearing adequately remedies a due-process violation arising from detention imposed without the required pre-deprivation protections. The constitutional injury is not merely the absence of *some* hearing at *some* point during detention; it is the Government's deprivation of liberty **before providing the process constitutionally required to justify that deprivation.**

162. That distinction matters here. Petitioner does not assert merely that his present detention has become lengthy enough that he should receive another bond hearing. His claim is that ICE was required to provide constitutionally sufficient process **before taking away the liberty that had previously been afforded to him.**

163. A post-deprivation bond hearing would therefore answer a different question. It would ask whether Petitioner should now be released after having already been detained for approximately three months. It would not remedy ICE's failure to determine, before imposing that detention, whether there existed an adequate individualized basis to deprive Petitioner of his liberty in the first place.

164. The circumstances of this case make a post-deprivation remedy particularly inadequate. Respondents knew exactly where Petitioner was. He had been in federal custody for approximately eighteen years. His release date was known in advance. There was no emergency requiring ICE to act first and provide process later.

165. Respondents therefore had every opportunity to provide notice and an individualized determination before Petitioner's transfer into civil immigration detention. The Government should not obtain a procedural advantage from its

own failure to provide that process by detaining Petitioner first and then offering a hearing months later.

166. Moreover, the factual landscape has materially changed since Petitioner's re-detention. The mandatory 90-day removal period has now expired; no travel document has been produced; no concrete removal date has been identified; and Petitioner himself has unsuccessfully attempted to obtain assistance and citizenship verification from Russian authorities. **See Ex. C.**

167. Thus, Petitioner's present claim is stronger than a request for a belated bond hearing. He challenges both **the constitutionally deficient manner in which his liberty was taken** and **the continuing statutory and constitutional justification for maintaining that detention after expiration of the removal period.**

168. Immediate release is an appropriate habeas remedy for that continuing unlawful detention. Indeed, in *Manoukyan*, the Court did not merely direct ICE to provide a future custody hearing. It **ordered the petitioner released** under his prior conditions of supervision. *Manoukyan*, No. 5:26-cv-00524-SPG-AJR, Dkt. 19 at 17. **See Ex. D at 17.**

169. Likewise, in *Long Thanh Ly v. D. Marin*, the District Court ordered the petitioner **"release[d] ... from detention immediately, subject to the previous**

**conditions of supervision."** No. ED CV 26-2485-SSS(E), Dkt. 12 at 1 (C.D. Cal. July 14, 2026). **See Ex. E at 1.**

170. Accordingly, should Respondents propose a post-deprivation bond or custody hearing as the remedy for Petitioner's constitutional claims, the Court should reject that proposed remedy and order Petitioner's **immediate release subject to appropriate conditions of supervision.**

## XXI. REQUEST FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

1. **Issue the writ of habeas corpus pursuant to 28 U.S.C. § 2241;**
2. **Order Respondents to release Petitioner immediately from immigration detention**, subject to appropriate conditions of supervision under 8 U.S.C. § 1231(a)(3) and any lawful existing conditions of federal supervision;
3. Declare that Petitioner's continued detention under the circumstances presented violates 8 U.S.C. § 1231(a)(6), as construed by *Zadvydas v. Davis*, and/or the Due Process Clause of the Fifth Amendment;
4. Order that Respondents not re-detain Petitioner following release absent compliance with applicable statutory, regulatory, and constitutional requirements, including constitutionally adequate notice and process where required;

5. Expedite consideration of this Petition in light of Petitioner's continuing physical detention; and

6. Grant such other and further relief as this Court deems just and proper.

Dated: September 16, 2026

*/s/ Sarah R. Hacobian*

**SARAH R. HACOBIAN**

Attorney for Petitioner

# EXHIBIT LIST

**Exhibit A** — Declaration of Sarah R. Hacobian, Esq., in Support of Petition for Writ of Habeas Corpus

**Exhibit B** — *Artur Ishkhanyan v. Pam Bondi, et al.*, Case No. 5:26-cv-04118-BFM, Order Denying Petition for Writ of Habeas Corpus Without Prejudice (C.D. Cal. Aug. 3, 2026)

**Exhibit C** — Artur Ishkhanyan's July 15, 2026 correspondence to Russian authorities, together with certified-mail receipts/envelopes documenting Petitioner's efforts to communicate with the Russian Embassy and/or Consular Division

**Exhibit D** — *Suren Manoukyan v. Todd Lyons, et al.*, Case No. 5:26-cv-00524-SPG-AJR, Dkt. 19, Order Granting, in Part, Petitioner's Application for Preliminary Injunction (C.D. Cal. Mar. 4, 2026)

**Exhibit E** — *Long Thanh Ly v. D. Marin, et al.*, Case No. ED CV 26-2485-SSS(E), Dkts. 11–12, Report and Recommendation and Order Accepting Findings, Conclusions and Recommendations of United States Magistrate Judge (C.D. Cal. June 3 & July 14, 2026)

**Exhibit F** — *Burunsuzyan v. Noem*, Case No. 5:26-cv-00049-RGK-AGR, 2026 WL 246067 (C.D. Cal. Jan. 27, 2026)

# EXHIBIT A

**DECLARATION OF SARAH R. HACOBIAN**

I, Sarah R. Hacobian, declare as follows:

1. I am an attorney duly licensed to practice law in the State of California and counsel of record for Petitioner Artur Ishkhanyan. I have personal knowledge of the matters stated herein based upon my representation of Petitioner and my review of the records in this matter.
2. Petitioner has remained continuously detained in ICE custody since June 18, 2026, when he was transferred directly from federal custody to immigration detention following completion of his federal sentence.
3. I previously represented Petitioner in *Ishkhanyan v. Bondi, et al.*, Case No. 5:26-cv-04118-BFM. On August 3, 2026, the Court denied that petition while Petitioner remained within the statutory 90-day removal period, expressly providing that the denial was "without prejudice to the claims being renewed should Petitioner's detention become prolonged." A true and correct copy of that Order is attached to the Petition as Exhibit B.
4. More than 90 days have now elapsed since Petitioner's June 18, 2026 transfer to ICE custody. To my knowledge, Petitioner remains detained, has not been issued travel documents permitting his removal to Russia, and has not been provided a concrete date for removal.

5. Petitioner has advised me that he has affirmatively attempted to assist in determining whether Russia will recognize him as a citizen and issue the documentation necessary for his removal. Petitioner sent written correspondence to Russian consular authorities and has advised me that he has also made repeated telephone attempts to contact the Russian Consulate while detained.

6. A true and correct copy of Petitioner's July 15, 2026 correspondence to Russian authorities, together with the certified-mail and envelope documentation provided to me demonstrating his effort to transmit that correspondence, is attached to the Petition collectively as Exhibit C.

7. Petitioner has advised me that, despite his efforts, he has received no meaningful response from Russian consular authorities concerning his citizenship status or the issuance of travel documents.

8. Petitioner has further advised me that he entered the United States with his family when he was approximately six years old, has lived in the United States for nearly his entire life, has never possessed a Russian passport, and has two adult United States citizen daughters and substantial immediate family ties in the United States.

9. Attached as Exhibits D through F are true and correct copies of the federal court orders identified in the Petition and submitted in support of Petitioner's claims

concerning post-removal-order detention, due process, and the availability of release as a habeas remedy.

10. Petitioner remains in physical immigration custody. This renewed Petition is being filed because the statutory 90-day removal period relied upon in the prior proceeding has now expired, Petitioner remains detained, and, to my knowledge, there has been no demonstrated concrete progress establishing when his removal can actually be effectuated.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 16th day of September 2026, at Glendale, California.

*/s/ Sarah R. Hacobian*
**SARAH R. HACOBIAN**

# EXHIBIT B

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:** 5:26-cv-04118-BFM **Date:** August 3, 2026

**Title:** *Artur Ishkhanyan v. Pam Bondi et al.*

==========================================================

Present: The Honorable Brianna Fuller Mircheff, United States Magistrate Judge

| Christianna Howard | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Petitioner | Attorneys Present for Respondents |
| N/A | N/A |

**Proceedings: (In Chambers) Order Denying Petition (ECF 1)**

Petitioner Artur Ishkhanyan filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on July 22, 2026. (ECF 1.) For the reasons stated below, the Petition (ECF 1) is **denied**.

## I. Factual Background

Petitioner Artur Ishkhanyan alleges the following facts: Petitioner is a noncitizen who is currently detained at the Desert View Facility, within the Central District of California. (ECF 1 ("Pet.") ¶¶ 29, 36-37.) He resided in the United States for decades and became a lawful permanent resident as a child. (Pet. ¶¶ 36-37.) He has two adult United States citizen children. (Pet. ¶¶ 39, 41, 88-91.)

In 2001 or 2002, immigration authorities detained Petitioner in Philadelphia for approximately one week. (Pet. ¶¶ 44-45.) He was granted bond and was released. (Pet. ¶¶ 47-48.) Following his release, Petitioner retained immigration counsel; he apprised his counsel of his new address when he moved but never received notice or other correspondence from his counsel regarding his immigration proceedings. (Pet. ¶¶ 50-54.) He also alleges that he did not receive any notices from the immigration court. (Pet. ¶ 55.) He was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:** 5:26-cv-04118-BFM **Date:** August 3, 2026

**Title:** *Artur Ishkhanyan v. Pam Bondi et al.*

==============================================================

ordered removed in absentia in March 2003. (ECF 8-2 (Order of Removal).) Petitioner claims he is currently trying to reopen his removal proceedings. (Pet. ¶ 41.)

In 2006, Petitioner was arrested in connection with a criminal investigation conducted by the Drug Enforcement Administration. (Pet. ¶ 57.) He was on bond in that case for approximately two years, before reporting to serve his sentence in 2008. (Pet. ¶¶ 58-59, 68.) Petitioner ultimately served approximately 18 years in federal custody. (Pet. ¶ 69.)

Petitioner completed his criminal sentence on June 18, 2026. (Pet. ¶ 76.) Instead of being released from BOP custody, he was transferred directly to Adelanto. (Pet. ¶¶ 77-78.) He alleges that he was not provided advance notice of the transfer or an opportunity to challenge that decision. (Pet. ¶¶ 79-81.)

Petitioner filed this Petition on July 22, 2026, arguing that his immigration detention violates due process and that he should be immediately released. (Pet. ¶¶ 124-230, and at 44.) Respondents filed their Answer (ECF 8) and Petitioner filed a reply (ECF 9-10). The Petition is fully briefed and ready for decision.

## II. Analysis

Petitioner argues that his detention without pre-deprivation process violates due process and he asks for release. (Pet. ¶¶ 124-230.) But Petitioner has a final order of removal. As such, he is detained pursuant to § 1231(a), the statutory provision that applies to those who have an administratively final removal order. Section 1231(a) requires that the Attorney General physically remove an individual ordered removed within 90 days. 8 U.S.C. § 1231(a)(1). That 90-day period began to run, in this case, when Petitioner was released from criminal custody. *See* 8 U.S.C. § 1231(a)(1)(B) (stating that the removal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:** 5:26-cv-04118-BFM **Date:** August 3, 2026

**Title:** *Artur Ishkhanyan v. Pam Bondi et al.*

==========================================================

period begins on the latest of several triggering acts, including "[i]f the [non-citizen] is detained or confined (except under an immigration process), the date the [non-citizen] is released from detention or confinement").) The statute further requires that the individual remain detained during the 90-day removal period. 8 U.S.C. § 1231(a)(2); *see also Zadvydas v. Davis*, 533 U.S. 678, 698 (2001) (the statute "mandates" detention during the 90-day removal period). Petitioner was transferred into immigration detention on June 18, 2026, just over a month ago. He is thus properly detained under the statute.

It follows that Petitioner's procedural due process argument is unavailing—no additional process would change the fact that Petitioner is subject to mandatory detention. The fact that he is seeking to reopen his immigration proceedings does not alter the fact that Petitioner is currently subject to mandatory detention. 8 C.F.R. § 241.4(b)(1) (a noncitizen "shall remain subject to the provisions of this section [241.4, concerning detention after the removal period] unless the motion to reopen is granted").

Petitioner's substantive due process claim (Pet. ¶¶ 231-250) likewise fails. Noncitizens subject to civil immigration detention—just like people detained civilly and individuals accused but not convicted of a crime—"cannot be subjected to conditions that 'amount to punishment.'" *See Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Civil detention may be deemed punitive "where it is excessive in relation to its non-punitive purpose, or is employed to achieve objectives that could be accomplished in so many alternative and less harsh methods." *Jones*, 393 F.3d at 934. Here, however, Petitioner has been detained only a brief time—far less than the presumptively reasonable period recognized in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001)—and his detention is not excessive to its purpose, which is to effectuate his removal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:** 5:26-cv-04118-BFM **Date:** August 3, 2026

**Title:** *Artur Ishkhanyan v. Pam Bondi et al.*

==========================================================

The Petition cites several cases without providing citations. (Pet. at 27-28, 30, 41-42.) Case names without citations are essentially useless—and more to the point, they violate the Central District of California's local rules. *See* Local Rule 11-3.9.3. In any event, from the descriptions provided by counsel and from the orders attached to the Petition, those cases involve individuals detained *pre*-removal order, where a different statutory scheme applies, or in the context of individuals released on OSUP, which is likewise subject to a different set of regulations. Those cases have no application here, and in any event, are not controlling authority.

## III. Conclusion

Accordingly, the Petition is denied, without prejudice to the claims being renewed should Petitioner's detention become prolonged. Judgment shall be entered accordingly.

**IT IS SO ORDERED**

cc: Counsel of Record

Initials of Preparer: ch

# EXHIBIT C

(4)

# URGENT PETITION

My name is Artur Ishkhanyan and I am a 53 year old former citizen of the U.S.S.R. I migrated to the United States of America with my entire family in 1979 when I was just six years old. We entered legally into the US and shortly thereafter were granted Permanent Residence status.

As of today's date I am being detained by ICE at the ICE processing center in Adelanto California. On June 18th 2026 I was released from Federal Prison after serving a 30 year sentence, instead of going home to my family who were anxiously awaiting my release I was detained and brought here, apparently in 2003 I was ordered removed to Russia.

The reason I am writing you today is because I want to know if ICE has requested travel documents on my behalf or attempted to verify if I am a Russian citizen. My stay in detention will be greatly extended if ICE and your Consulate do not communicate to verify if I am a citizen of Russia or that Russia will or will not provide me with the necessary travel documents to be admitted into Russia.

I would like to be released from detention as soon as possible and if there is anything I can do to assist you in determining if I can or can not be admitted into Russia I will do, just let me know what you require from me. I would just like you to keep in mind that I never had a passport and that I arrived here in the US as a 6 year old child 48 years ago. Thank you and I look forward to hearing back from you in the near future.

**NAME:**
**Artur Ishkhanyan**
**DOB:**
**January 29, 1973**
**A#**
**023363331**

The Letter I sent to the Russian Embassy and the Consulate! The certified Envelopes also included.

Respectfully,

[signature]

7-15-26

Artur Ishkhanyan
10250 Rancho Rd
Adelanto, CA 92301
#023363331 Dorm# 3B

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

quadient
CORRECTION
IMI
$010.48 º
07/20/2026 ZIP 92301
043M31242472
US POSTAGE

Embassy of the Russian Federation
Consular Division
2641 Tunlaw Rd NW
Washington, DC 20007

Certified Reciept & Return Receipt requested

(9)

**CERTIFIED MAIL®**

9589 0710 5270 2655 6325 27

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Embassy of the
Russian Federation
Consular Division
2641 Tunlaw Rd NW
Washington DC 20007

9590 9402 9089 4122 8031 65

2. Article Number (*Transfer from service label*)

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addressee

B. Received by (*Printed Name*)

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type

- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☐ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053

Domestic Return Receipt

# EXHIBIT D

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SUREN MANOUKYAN, an individual,<br>Petitioner,<br>v.<br>TODD LYONS, Acting Director, Immigration and Customs Enforcement; FERETI SEMAIA, Warden, Adelanto West ICE Processing Center; KRISTI NOEM, Secretary, U.S. Department of Homeland Security; FIELD OFFICE DIRECTOR, ICE Enforcement and Removal Operations, Los Angeles; and DOES 1-10, in their official capacities,<br>Respondents. | Case No. 5:26-cv-00524-SPG-AJR<br>**ORDER GRANTING, IN PART, PETITIONER'S APPLICATION FOR A PRELIMINARY INJUNCTION [ECF NO. 3]** |

On February 5, 2026, Petitioner filed a "Motion for Temporary Restraining Order and Stay of Removal." (ECF No. 3 ("Motion")). In that document, Petitioner challenged his continued detention under 8 U.S.C. § 1231(a)(6), as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001). *See* (*id.* at 3). Petitioner requested relief in the form of a stay of removal, a prohibition on his transfer outside the Central District of California, and an expedited response to his habeas petition. *See* (ECF No. 3-1 ("Proposed TRO Order")).

On February 18, 2026, the Court granted Petitioner's Motion, in part, concluding that he was likely to succeed on the merits of his claim under § 1231(a)(6). *See* (ECF No. 13 ("Order Granting TRO")). The Court's order directed Respondents Todd Lyons, Fereti Semaia, Kristi Noem, and Todd Marin ("Respondents") to show cause why the Court should not issue a preliminary injunction. *See* (*id.* at 13). On February 23, 2026, Petitioner filed an opening brief in support of his request for a preliminary injunction. *See* (ECF No. 15 ("Opening Brief")). In his Opening Brief, Petitioner challenges his continued detention under both § 1231(a)(6) and the Fifth Amendment's Due Process Clause. *See* (*id.* at 4–5). The Court has read and considered the Motion and concluded that it is suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS the Motion, in part, and ORDERS Petitioner's release from custody.

## I. INTRODUCTION

Petitioner is an Armenian national detained at the Immigration and Customs Enforcement ("ICE") Processing Center in Adelanto, California. *See* (ECF No. 7 ("Petition") ¶¶ 1, 18). In his Motion for Temporary Restraining Order, Petitioner did not request that the Court order his release from custody. *See* (Motion at 4–5 (Requested Relief)); *see also* (Proposed TRO Order). Thus, notwithstanding the Court's finding that Petitioner is likely to succeed on his habeas petition, Petitioner remains in custody. *See* (Opening Brief at 2 ("Petitioner remains detained")).

In 2009, Petitioner was convicted of conspiracy to commit kidnapping, in violation of California Penal Code §§ 182(a)(1) and 207(a). *See* (Petition ¶ 21). As a result of his conviction, Petitioner was sentenced to eight years in prison. *See* (*id.* ¶ 21). He was released in 2011. *See* (*id.* ¶ 22). Immediately after Petitioner was released from criminal custody, ICE seized Petitioner and placed him in immigration detention. *See* (*id.* ¶ 22). On March 21, 2011, an immigration judge ("IJ") ordered Petitioner's removal to Armenia. *See* (ECF No. 10-1, Declaration of Lourdes Palacios ("Palacios Decl."), ¶ 7). Following

the order of removal, Petitioner remained in immigration detention for approximately three months, as the Government attempted to effect Petitioner's removal. *See* (*id.* ¶¶ 7–10).

A week after the IJ ordered Petitioner's removal, on March 28, 2011, the Government requested that Armenia issue travel documents for Petitioner. *See* (*id.* ¶ 8). However, on or around May 5, 2011, Armenia denied the request. *See* (*id.* ¶ 9). In a letter to the Department of Homeland Security ("DHS"), the Consulate General of the Republic of Armenia wrote that "the relevant Armenian Authorities conducted a thorough check of the national data registries" to ascertain Petitioner's citizenship but "[n]o record/evidence has been found to prove [his] citizenship." *See* (ECF No. 11, Ex. A, at 15). On May 31, 2011, an ICE Deportation Officer emailed a DHS official in Washington, D.C., to request advice on how to proceed. *See* (*id.* at 16). He explained that Armenia had "issued a denial letter" and asked whether there was "anything further that realistically [could] be done" to obtain Armenian travel documents for Petitioner. *See* (*id.*). In response, on June 7, 2011, the DHS official replied that there was "no other option" to obtain Armenian travel documents. *See* (*id.*). He explained that, even if Petitioner obtained Armenian citizenship, Armenia was "not likely" to issue travel documents in light of Petitioner's criminal history. *See* (*id.*).

On June 23, 2011, the Government released Petitioner from immigration detention, under an order of supervision ("OSUP"). *See* (Palacios Decl. ¶ 10). The parties dispute Petitioner's compliance with the OSUP. Petitioner claims that he fully complied with "all ICE reporting requirements" and never missed an appointment or check-in. (Petition ¶ 25). Respondents claim that Petitioner missed two appointments. *See* (Palacios Decl. ¶¶ 11–13). Petitioner responds that he had documents to disprove Respondents' claim, but ICE seized his documents at the time of his detention and now refuses to return them. *See* (ECF No. 11, Declaration of Sarah Hacobian ("Hacobian Decl."), ¶¶ 2–5). Respondents have filed subsequent briefing to oppose Petitioner's request for release on a preliminary injunction but, in their response, do not address Petitioner's claim that ICE seized documents showing Petitioner's reporting history. *See* (ECF No. 16 ("Opposition")).

On January 20, 2026, ICE arrested Petitioner during a routine check-in. *See* (Petition ¶ 25). Petitioner claims that, before re-detaining him, ICE did not perform "any meaningful individualized custody determination." *See* (*id.*). The day after re-detaining him, "a consulate notification was sent via email to the Consulate of Armenia." (Palacios Decl. ¶ 15). Respondent claims that, on February 3, 2026, "a travel interview was attempted but [Petitioner] refused to participate." (*Id.* ¶ 16). Petitioner claims that he did not refuse to participate in a travel interview. *See* (Hacobian Decl. ¶ 8). Instead, he says that ICE "presented him with documents related to travel processing," "he requested an opportunity to consult with counsel before signing because he did not understand the documents," and, since that time, he has spoken with his attorney, yet "ICE has not returned to obtain his signature." (*Id.*). In their Opposition, Respondents do not contest Petitioner's description of events. *See* (Opp.).

On February 5, 2026, Petitioner filed a habeas petition and an application for a temporary restraining order ("TRO"). *See* (ECF Nos. 1, 3).[1] Four days later, on February 9, 2026, "a travel document request was sent to the Consulate General of Armenia." (Palacios Decl. ¶ 18). According to Respondents, this request remains pending. *See* (Opp. at 3, 8). On February 18, 2026, the Court entered an order granting, in part, Petitioner's application for a TRO. *See* (Order Granting TRO). The Court concluded that, although Petitioner had been detained for less than six months following the entry of an order of removal, Petitioner had sufficiently shown that he was likely to succeed on a claim that his continued detention violates § 1231(a)(6), as interpreted by *Zadvydas*. *See* (*id.* at 8–9).

In the order partially granting Petitioner's TRO application, the Court set a further briefing schedule on Petitioner's request for a preliminary injunction and scheduled a preliminary injunction hearing for March 4, 2026. *See* (Order Granting TRO at 12). On February 23, 2026, Petitioner filed an opening brief in support of his request for a

---

[1] On February 6, 2026, the Court struck the initial habeas petition based on Petitioner's inclusion of sensitive and private information contained in the exhibits to the petition. *See* (ECF No. 6). Petitioner filed the instant Petition on February 10, 2026.

preliminary injunction. *See* (Opening Brief). In his Opening Brief, unlike in his initial application for a temporary restraining order, Petitioner requested an order to require Respondents to release him from custody, under the terms of his OSUP. *See* (Opening Brief at 7). In addition to his claim under § 1231(a)(6), in the Opening Brief, Petitioner also challenges his re-detention under the Due Process Clause, based on Respondents' failure to provide him with "a meaningful bond or custody hearing upon re-detention." (*Id.* at 5). On February 27, 2026, Respondents filed their Opposition. *See* (Opp.).

## II. LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The standard for issuing a preliminary injunction is essentially the same as that for issuing a temporary restraining order. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical." (internal quotation marks and citation omitted)). Thus, a plaintiff may secure a preliminary injunction order upon establishing that: (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *See Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (citing *Winter*, 555 U.S. at 20).

"[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted). "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)). "'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the

extraordinary remedy of injunction.'" *Id.* (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

The court is permitted to consider the parties' pleadings, declarations, affidavits, and exhibits submitted when deciding an application for a preliminary injunction. *See Earth Island Inst. v. Nash*, No. 1:19-cv-01420-DAD-SAB, 2020 WL 1936701, at *6 (E.D. Cal. Apr. 21, 2020) ("[I]n considering a motion for preliminary injunction, a court may consider and rely upon declarations, affidavits, and exhibits submitted by the parties." (citations omitted)); *Harper v. Poway Unified Sch. Dist.*, 345 F. Supp. 2d 1096, 1119–20 (S.D. Cal. 2004) (considering declarations submitted by defendants to deny plaintiff's request for a preliminary injunction). "The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984). The urgency of the relief sought necessitates a prompt determination and can make it difficult to obtain admissible evidence. *See id.*

**III. DISCUSSION**

In the Court's order addressing Petitioner's TRO application, the Court concluded that Petitioner was likely to succeed on the merits of his claim under § 1231(a)(6), based on his showing that the Government was unlikely to effect his removal in the foreseeable future. *See* (Order Granting TRO at 7–11). In Opposition, Respondents argue that "[p]olitical relations between the United States and Armenia have changed significantly since Petitioner was ordered removed," such that Petitioner cannot show that there is no significant likelihood of his removal to Armenia in the foreseeable future. *See* (Opp. at 6). However, Respondents do not address Petitioner's argument that his re-detention violated the Constitution because Respondents did not provide him with an individualized custody determination before re-detaining him. *See generally* (Opp.). Because Petitioner has shown that he is likely to succeed on the merits of his due process claim (raised for the first

time in connection with his request for a preliminary injunction),[2] the Court need not decide whether Petitioner has shown that his removal is not likely in the foreseeable future.

**A. Jurisdiction**

At the outset, Respondents argue that, under §§ 1252(a)(5) and 1252(b)(9), the Court lacks jurisdiction to review Petitioner's detention. *See* (Opp. at 10–11). Section 1252(a)(5) provides that, "[n]otwithstanding any other provision of law . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter." 8 U.S.C. § 1252(a)(5). Section 1252(b)(9), meanwhile, states, "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). Section 1252(b)(9) continues, "[e]xcept as otherwise provided in this section, no court shall have jurisdiction . . . to review such an order or such questions of law or fact." *Id.*

The Court finds §§ 1252(a)(5) and 1252(b)(9) inapplicable here. Section 1252(a) only provides for "judicial review of an order of removal entered or issued under any provision of this chapter." 8 U.S.C. § 1252(a)(5). However, Petitioner only challenges the

---

[2] Based on the briefing schedule, Respondents had notice that Petitioner intended to seek preliminary injunctive relief based on an asserted violation of the Due Process Clause, as well as the opportunity to respond to Petitioner's argument. *See* (Order Granting TRO at 12); *see* Fed. R. Civ. P. 65(a)(1) ("The court may issue a preliminary injunction only on notice to the adverse party"). Respondents do not argue that, because Petitioner failed to raise his due process claim in support of his request for a temporary restraining order, he is now barred from doing so in his request for a preliminary injunction. *See* (Opp.). Thus, in the absence of argument otherwise, the Court considers Petitioner's due process claim in assessing his request for a preliminary injunction. *See also Arizona Recovery Hous. Ass'n v. Arizona Dep't of Health Servs.*, 462 F. Supp. 3d 990, 996 (D. Ariz. 2020) (noting TROs are only intended to preserve the status quo until a court has the opportunity to hold a preliminary injunction hearing, whereas preliminary injunctions are intended to preserve the status quo and the parties' rights until final judgment).

legality of his detention. Therefore, § 1252(a)(5) is facially inapplicable. Similarly, notwithstanding the broad language set out in § 1252(b)(9), this provision does not "preclude habeas review over challenges to detention that are independent of challenges to removal orders." *Singh v. Holder*, 638 F.3d 1196, 1211 (9th Cir. 2011); *see also Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 20 (2020) ("§ 1252(b)(9) does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." (internal quotation marks and ellipses omitted)). Here, Petitioner's challenge to his detention is independent of any challenge to his removal order and, thus, § 1252(b)(9) does not apply.

**B. Likelihood of Success on the Merits**

In general, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1). During this 90-day removal period, noncitizens subject to a final order of removal are subject to mandatory detention. *See* 8 U.S.C. § 1231(a)(2)(A) ("During the removal period, the Attorney General shall detain the alien."). After 90 days, if the Government is not able to remove a noncitizen subject to a final order of removal, the Government must release the noncitizen under an order of supervision. *See* 8 U.S.C. § 1231(a)(3) ("If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."). However, under 8 U.S.C. § 1231(a)(6), the Government may, as a matter of discretion, continue to detain certain "inadmissible or criminal aliens" beyond the 90-day removal period.

In *Zadvydas v. Davis*, the Supreme Court considered whether § 1231(a)(6) permits the Government to indefinitely detain noncitizens subject to a final order of removal. In that decision, the Court determined that construing § 1231(a)(6) to permit the indefinite detention of noncitizens "admitted to the United States but subsequently ordered removed" would "raise serious constitutional concerns" under the Due Process Clause. *Zadvydas*, 533 U.S. at 682. The Court therefore interpreted § 1231(a)(6) to "contain an implicit

'reasonable time' limitation, the application of which is subject to federal-court review." *Id.* The Court explained that "[w]hether a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal is determinative of whether the detention is, or is not, pursuant to statutory authority." *Id.* at 699. The Court held that, on habeas review, courts must "ask whether the detention in question exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* The Court explained that, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699–700.

In applying this framework, the Court recognized that such habeas review "must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700. Therefore, in order to "limit the occasions when courts" will need to make "difficult judgments" about the "appropriate leeway" to afford the Executive Branch, the Court deemed it "practically necessary to recognize some presumptively reasonable period of detention." *Id.* at 700–01. The Court found that there was "reason to believe . . . that Congress previously doubted the constitutionality of detention for more than six months" and, therefore, determined that detention under § 1231(a)(6) is "presumptively reasonable" for up to six months. *See id.* at 701. The Court held that, after this six-month period, courts should apply a burden shifting analysis. "[O]nce the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* *Zadvydas* does not address when, if ever, a noncitizen may challenge their detention as unreasonable under § 1231(a)(6) when detained less than six months and, if such a challenge is possible, what standard courts should apply. *See id.*

At least three courts of appeals have interpreted *Zadvydas* to categorically bar a petitioner from challenging his detention under § 1231(a)(6) until detained for at least six months. *See, e.g.*, *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("[I]n order to state a claim under *Zadvydas* the alien . . . must show post-removal order detention in excess of six months[.]"); *Chance v. Napolitano*, 453 F. App'x 535, 536 (5th Cir. 2011) (denying appeal where petitioner "had not been in post-removal-order detention longer than the presumptively reasonable six-month period" and the district court therefore determined "that his challenge to his continued post removal detention was premature"); *Kumar v. U.S. Dep't of Homeland Sec.*, No. 19-2404, 2020 WL 2904685, at *1 (6th Cir. June 1, 2020) ("[D]etention under § 1231 has not yet exceeded six months and any challenge to that [detention] is therefore not ripe for review.").

The Ninth Circuit, however, has not addressed whether a petitioner may challenge their detention under § 1231(a)(6) before reaching six months in post-removal-order detention. *See Sweid v. Cantu*, No. CV-25-03590-PHX-DWL (CDB), 2025 WL 3033655, at *3 n.2 (D. Ariz. Oct. 30, 2025). In a series of decisions, judges within the Central District of California have interpreted *Zadvydas* as not establishing a categorical bar to challenges under § 1231(a)(6) where a noncitizen is detained for less than six months. *See, e.g.*, *Hanna v. Santacruz*, No. 5:26-CV-00267-ODW (KSX), 2026 WL 242029, at *3 (C.D. Cal. Jan. 29, 2026) (Wright, J.); *Burunsuzyan v. Noem*, No. 5:26-CV-00049-RGK-AGR, 2026 WL 246067, at *5 (C.D. Cal. Jan. 27, 2026) (Klausner, J.); *Abramian v. Bondi*, No. ED CV 25-3080-DMG (SPX), 2026 WL 166907, at *5 (C.D. Cal. Jan. 16, 2026) (Gee, C.J.); *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1093 (C.D. Cal. 2020) (Carney, J.). Other courts within the Ninth Circuit, *see, e.g.*, *Tumasov v. Doe 1*, No. 26CV590-LL-DEB, 2026 WL 458146, at *2–3 (S.D. Cal. Feb. 18, 2026); *Alkarori v. Nevada S. Det. Ctr.*, No. 2:25-CV-02567-MMD-MDC, 2026 WL 266756, at *2 (D. Nev. Feb. 2, 2026); *Uzzhina v. Chestnut*, No. 1:25-CV-01594-DAD-SCR, 2025 WL 3458787, at *3 n.3 (E.D. Cal. Dec. 2, 2025), and across the country, *see, e.g.*, *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 396–98 (D.N.J. 2025); *Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 707 (S.D. Tex. 2020);

*Cesar v. Achim*, 542 F. Supp. 2d 897, 902–05 (E.D. Wis. 2008), have reached the same conclusion.

The Court's prior TRO order concluded that, "[a]t a minimum, the Government's inability to remove Petitioner to Armenia between 2011 and 2026 poses a serious question going to the merits, sufficient to support Petitioner's request for preliminary injunctive relief." (Order Granting TRO at 10 (citing *Cottrell*, 632 F.3d at 1135)). The Court reasoned that the "presumption" set forth in *Zadvydas* "is not a prohibition on claims challenging detention less than six months." *Id.* (citing *Burunsuzyan*, 2026 WL 246067, at *5). Instead, the Court found that *Zadvydas* requires courts assessing a challenge to detention under § 1231(a)(6) to "ask whether the detention in question exceeds a period reasonably necessary to secure removal" and, "if removal is not reasonably foreseeable, . . . hold continued detention unreasonable and no longer authorized by statute." *Id.* (quoting *Zadvydas*, 533 U.S. at 699–700); *see also Clark v. Martinez*, 543 U.S. 371, 384 (2005) (*Zadvydas* held that § 1231(a)(6) "should be read . . . to authorize detention only for a period consistent with the purpose of effectuating removal").

In Respondents' brief in opposition to Petitioner's request for a preliminary injunction, Respondents do not argue that *Zadvydas* establishes a categorical bar to habeas petitions challenging a petitioner's post-removal-order detention of less than six months. *See* (Opp. at 5). Instead, Respondents argue that "Petitioner's most recent detention is just over one month" and, "[h]aving such a short total detention time, he cannot prove there is no significant likelihood of removal in the reasonably foreseeable future." (*Id.* (citing Order, *Nguyen v. Bowen*, 5:25-cv-03109-MCS-ADS, ECF No. 12 (C.D. Cal. Dec. 1, 2025)); *see also* Order, *Nguyen*, ECF No. 12 at 6 (concluding detention of less than six months was presumptively reasonable and petitioner had not shown that there was no significant likelihood he would be removed in the reasonably foreseeable future). *But see* (Palacios Decl. ¶¶ 7–10, 14 (Petitioner has been detained for a cumulative period of over four months)); *see also Phan v. Warden of Otay Mesa Det. Facility*, No. 25-CV-02369-AJB-BLM, 2025 WL 3141205, at *3 (S.D. Cal. Nov. 10, 2025) (collecting cases for the

proposition that courts within the Ninth Circuit "appear to uniformly aggregate detention periods, even over the span of decades"). As previously noted, Respondents further argue that Petitioner cannot show that his removal is not likely based on the Government's prior inability to remove him, as "[p]olitical relations between the United States and Armenia have changed significantly since Petitioner was ordered removed." (Opp. at 6). In support, Respondents cite to a recent case in which a petitioner claimed that Armenia had refused to issue him travel documents but, roughly a year later, accepted petitioner's removal. *See* (*id.*); *see also* Verified Petition, *Ovsepian v. Bondi*, 5:25-cv-01937, ECF No. 1, ¶ 7 (C.D. Cal. July 28, 2025); Declaration of Enrique Chavez, *Ovsepian*, ECF No. 44-1, ¶ 3 (C.D. Cal. Oct. 9, 2025).

However, as noted, Respondents do not address Petitioner's argument that Respondents violated his right to due process by re-detaining him without first providing him with an individualized pre-detention hearing. *See generally* (Opp.); *see also* (Opening Brief at 5). "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Denmore v. Kim*, 538 U.S. 510, 523 (2003). The Ninth Circuit has assumed without deciding that the balancing test set out in *Matthews v. Eldridge*, 424 U.S. 319 (1976), applies to procedural due process claims in the immigration context. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022). District courts within the Ninth Circuit have similarly applied the *Matthews* test to procedural due process claims challenging immigration detention. *See Hogarth v. Santacruz*, No. 5:25-CV-09472-SPG-MAR, 2025 WL 3211461, at *6 (C.D. Cal. Oct. 23, 2025) (collecting cases).

In *Matthews*, the Supreme Court set out three factors that courts should consider in assessing a due process claim: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would

entail." 424 U.S. at 335. Applying this framework to the facts of the instant case, the Court finds that Petitioner is likely to succeed on the merits of his procedural due process claim.

First, Petitioner has a strong liberty interest in remaining on conditional release from detention. "The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); *see also Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) ("[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others."). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Since Petitioner was released from immigration custody in 2011, Petitioner has remained free for roughly 15 years, raising a family in the United States, holding gainful employment, and serving as an active member of his community. *See* (Petition ¶¶ 28–32); *see also* (*id.*, Exhibits D–G (showing Petitioner has a wife and two children in the United States, works as a licensed commercial truck driver, is an active member of his church, and has provided support to members of his community)). Although Petitioner's private interest may be "diminished by the fact that he is subject to an order of removal from the United States," *Rodriguez Diaz*, 53 F.4th at 1208,[3] "[t]he length of time [petitioner] was

---

[3] In *Rodriguez Diaz*, the Ninth Circuit analyzed whether a petitioner detained under 8 U.S.C. § 1226(a), based on a determination that he posed a danger to the community, had a protected liberty interest in "a second bond hearing at which the government bears the burden of proof by clear and convincing evidence." *Id.* at 1203. In assessing the petitioner's interest, the Ninth Circuit "consider[ed] the process he received during [his time in detention], the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order." *Id.* at 1208. In light of these considerations, the Ninth Circuit concluded the petitioner had a protected liberty interest but that it was "important not to overstate the strength of [his] showing." *Id.* at 1207. The Ninth Circuit's analysis of the petitioner's liberty interest in *Rodriguez*

on supervised release, as well as petitioner's ties to his community, strengthen petitioner's interest in his continued release," *Yang v. Kaiser*, No. 2:25-CV-02205-DAD-AC (HC), 2025 WL 2791778, at *8 (E.D. Cal. Aug. 20, 2025); *accord Wang v. Semaia*, No. EDCV 26-00203-KK-MBKX, 2026 WL 258440, at *4 (C.D. Cal. Jan. 29, 2026).

Second, on the record presented, the process Respondents followed in re-detaining Petition carries a significant risk of erroneous deprivation. "The right to prior notice and a hearing is central to the Constitution's command of due process." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993). Traditionally, "whatever its form, [the] opportunity for [a] hearing must be provided before the deprivation at issue takes effect." *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972) (internal quotation marks and citations omitted); *see also Zinermon v. Burch*, 494 U.S. 113, 127 (1990) ("[T]he Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property."). While courts "tolerate some exceptions to the general rule requiring predeprivation notice and hearing," such exceptions are only permissible in "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *James Daniel Good Real Prop.*, 510 U.S. at 53 (government may not seize real property without first affording the owner of notice and an opportunity to be heard); *see also Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 19 (1978) ("[W]here the potential length or severity of the deprivation does not indicate a likelihood of serious loss and where the procedures underlying the decision to act are sufficiently reliable to minimize the risk of erroneous determination, [the] government may act without providing additional advance procedural safeguards." (internal quotation marks omitted)) (requiring notice and hearing before municipal utility terminated customer's service).

In assessing Petitioner's challenge to his continued detention, it is unnecessary to determine whether the Government must provide noncitizens released on an order of

---

*Diaz* is distinguishable as, there, the petitioner had already received a bond hearing. *See id.* at 1194–95.

supervision with a hearing before revoking their release. In the instant case, Respondents do not identify any meaningful process before revoking Petitioner's OSUP. In all, Respondents contend that, after Petitioner reported for a routine check-in, ICE conducted a "case review," "determined" Petitioner was subject to a final order of removal, and "booked [him] into ERO custody." (Palacios Decl. ¶ 14). Respondents do not contend that, as required by DHS regulations, the Director of ICE or an ICE district director made an official decision to revoke Petitioner's supervised release. *See* 8 C.F.R. § 241.4(l)(2); *see also* 8 C.F.R. § 1.2. Respondents do not contend that ICE made an official determination Petitioner had violated the conditions of his OSUP or of changed circumstances permitting removal. *See* 8 C.F.R. § 241.13(i)(1)–(2). Finally, Respondents do not contend that, before detaining Petitioner, DHS provided Petitioner with a notice that set out "the reasons for revocation of his . . . release" or, after he was detained, "conduct[ed] an initial informal interview" at which Petitioner had the "opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3).

Thus, in re-detaining Petitioner, it appears that ICE did not follow its own policy. *See, e.g.*, *Burunsuzyan*, 2026 WL 246067, at *4 (due process violation where notice of revocation failed to specify who made the decision to revoke petitioner's release or a basis for a finding of changed circumstances); *Kesheshian v. Kristi Noem*, No. 5:25-CV-03478-MWC-DFM, 2025 WL 4227216, at *4 (C.D. Cal. Dec. 24, 2025) ("[R]easoning which does not identify any specific changed circumstance is insufficient to put Petitioner on notice as to what led to the revocation of his OSUP." (internal quotation marks omitted)). To the extent Respondents failed to follow the regulatory pre-requisites to revoke Petitioner's OSUP, Petitioner's detention is unlawful on this basis alone. *See, e.g.*, *Mahalati-Shirazi v. Noem*, No. 5:26-CV-00117-MWC-SSC, 2026 WL 174654, at *5 (C.D. Cal. Jan. 18, 2026) (failure to follow re-detention policy as a due process violation).

Finally, based on the facts of this case, Respondents have not shown a countervailing interest sufficient to justify Petitioner's continued detention. "[U]nlawful detention . . . warrants immediate release." *Delkash v. Noem*, No. 5:25-CV-01675-HDV-AGR, 2025

WL 2683988, at *1 (C.D. Cal. Aug. 28, 2025); *see also Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 166 (W.D.N.Y. 2025) ("[B]ecause ICE did not follow its own regulations in deciding to re-detain Ceesay, his due process rights were violated, and he is entitled to release."). While the Court credits the Government's general interest in detaining certain noncitizens during the pendency of removal as necessary to protect the public or prevent flight, *see Rodriguez Diaz*, 53 F.4th at 1208, Respondents have not shown that either justification for detention is applicable, especially since the Government previously released Petitioner in 2011 from immigration detention under an OSUP despite Petitioner's prior conviction.

Thus, on the record presented, the Court concludes that Petitioner is likely to succeed on his claim that his continued detention violates the Fifth Amendment's Due Process Clause. The Court therefore finds it unnecessary to address whether, in light of the argument presented in Respondents' Opposition, Petitioner is likely to succeed on the claim that his continued detention violates 8 U.S.C. § 1231(a)(6), though the Court previously determined that Petitioner had met his burden to obtain a TRO based on the evidence then in the record. *See* (Order Granting TRO).

**C. Irreparable Harm**

Petitioner has sufficiently shown that he faces irreparable harm, absent his release from custody. "The irreparable harms imposed on anyone subject to immigration detention (or other forms of imprisonment) are self-evident." *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1037 (N.D. Cal. 2025) (internal quotation marks and alterations omitted); *see also Padilla v. Bowen*, No. 2:25-CV-10780-CAS-SK, 2025 WL 3251368, at *9 (C.D. Cal. Nov. 21, 2025) ("The Ninth Circuit has recognized the 'irreparable harms imposed on anyone subject to immigration detention'" (quoting *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017)). Further, beyond depriving him of his liberty, Petitioner contends that his "sudden and unanticipated re-detention has imposed severe and immediate hardship on his family, including the loss of their principal source of financial support, disruption of childcare and family stability." (Petition ¶ 29); *see also Barker v. Wingo*, 407 U.S. 514,

532–33 (1972) (incarceration "has a detrimental impact on [an] individual" because "it often means loss of a job" and "disrupts family life.").

**D. Balance of Equities and Public Interest**

When the government is the nonmoving party on a TRO application, the Court's consideration of the balance of the equities and public interest merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). While there is a "public interest in prompt execution of removal orders," *id.* at 436, permitting the Government to unconstitutionally detain Petitioner does not serve this interest. By contrast, "[t]he public has a strong interest in upholding procedural protections against unlawful detention." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025); *see also Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.").

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS the Motion, in part, and ORDERS as follows:

1. Respondents are ORDERED to release Petitioner, under the conditions set out in the order of supervision that previously governed Petitioner's release.
2. Respondents are ORDERED not to re-detain Petitioner, except insofar as permitted under 8 C.F.R. §§ 241.4(l) and 241.13(i).
3. Because Petitioner has not shown that he is likely to suffer irreparable harm absent an order to restrict his transfer outside the Central District of California, Petitioner's request for such an order, listed as no. 3 in the "Requested Relief" set out in Petitioner's Opening Brief, is DENIED.
4. The Petition is referred to the assigned Magistrate Judge for further adjudication.

**IT IS SO ORDERED.**

DATED: March 4, 2026

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE

# EXHIBIT E

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LONG THANH LY,

Petitioner,

v.

D. MARIN, ETC., ET AL.,

Respondents.

No. ED CV 26-2485-SSS(E)

ORDER ACCEPTING FINDINGS, CONCLUSIONS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. section 636, the Court has reviewed the Petition, all of the records herein and the Report and Recommendation of United States Magistrate Judge. Further, the Court has engaged in a de novo review of those portions of the Report and Recommendation to which any objections have been made. The Court accepts and adopts the Magistrate Judge's Report and Recommendation.

IT IS ORDERED that: (1) the Report and Recommendation is accepted and adopted; and (2) Judgment shall be entered ordering Respondents to release Petitioner (A 43066811) from detention immediately, subject to the previous conditions of supervision.

///

///

///

IT IS FURTHER ORDERED that the Clerk serve forthwith a copy of this Order, the Magistrate Judge's Report and Recommendation and the Judgment herein on Petitioner, counsel for Petitioner and counsel for Respondents.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: July 14, 2026.

SUNSHINE SUZANNE SYKES
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LONG THANH LY,<br>Petitioner,<br>v.<br>D. MARIN, ETC., ET AL.,<br>Respondents. | No. ED CV 26-2485-SSS(E)<br><br>REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

This Report and Recommendation is submitted to the Honorable Sunshine Suzanne Sykes, United States District Judge, pursuant to 28 U.S.C. section 636 and General Order 05-07 of the United States District Court for the Central District of California.

On May 7, 2026, Petitioner, a detainee of Immigration and Customs Enforcement ("ICE") filed a "Petition for Writ of Habeas Corpus, etc." ("the Petition"). According to the Petition, Petitioner is a native and citizen of Vietnam who was released from immigration detention on supervision in 1998, but re-detained in violation of Petitioner's federal rights on April 21, 2026. The Petition seeks, inter alia, immediate release.

///

///

On May 20, 2026, Respondents filed "Respondents' Response to Petition for Writ of Habeas Corpus" ("the Response"). The Response states: "Respondents are not presenting an opposition argument at this time." Petitioner did not file a Reply within the allotted time.[1]

Based on the facts alleged in the Petition, and in view of Respondents' failure to oppose the Petition, the Magistrate Judge recommends that Judgment be entered ordering Respondents to release Petitioner (A 43066811) from detention immediately, subject to the previous conditions of supervision.[2]

DATED: June 3, 2026.

CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[1] Petitioner's newly retained counsel did file a copy of a document filed in action No. 26-2560-AS, which does not affect the disposition recommended herein.

[2] Petitioner has not justified any additional or different form of habeas relief.

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LONG THANH LY,<br>Petitioner,<br>v.<br>D. MARIN, ETC., ET AL.,<br>Respondents. | No. ED CV 26-2485-SSS(E)<br><br>ORDER ACCEPTING FINDINGS, CONCLUSIONS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

Pursuant to 28 U.S.C. section 636, the Court has reviewed the Petition, all of the records herein and the Report and Recommendation of United States Magistrate Judge. Further, the Court has engaged in a de novo review of those portions of the Report and Recommendation to which any objections have been made. The Court accepts and adopts the Magistrate Judge's Report and Recommendation.

IT IS ORDERED that: (1) the Report and Recommendation is accepted and adopted; and (2) Judgment shall be entered ordering Respondents to release Petitioner (A 43066811) from detention immediately, subject to the previous conditions of supervision.

///

///

///

IT IS FURTHER ORDERED that the Clerk serve forthwith a copy of this Order, the Magistrate Judge's Report and Recommendation and the Judgment herein on Petitioner, counsel for Petitioner and counsel for Respondents.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: ______________________, 2026.

______________________________
SUNSHINE SUZANNE SYKES
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LONG THANH LY,<br>Petitioner,<br>v.<br>D. MARIN, ETC., ET AL.,<br>Respondents. | No. ED CV 26-2485-SSS(E)<br><br>JUDGMENT |

IT IS ADJUDGED that Respondents are ordered to release Petitioner (A 43066811) from detention immediately, subject to the previous conditions of supervision.

DATED: ______________________, 2026

______________________________
SUNSHINE SUZANNE SYKES
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LONG THANH LY,<br>Petitioner,<br>v.<br>D. MARIN, ETC., ET AL.,<br>Respondents. | No. ED CV 26-2485-SSS(E)<br><br>REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

This Report and Recommendation is submitted to the Honorable Sunshine Suzanne Sykes, United States District Judge, pursuant to 28 U.S.C. section 636 and General Order 05-07 of the United States District Court for the Central District of California.

On May 7, 2026, Petitioner, a detainee of Immigration and Customs Enforcement ("ICE") filed a "Petition for Writ of Habeas Corpus, etc." ("the Petition"). According to the Petition, Petitioner is a native and citizen of Vietnam who was released from immigration detention on supervision in 1998, but re-detained in violation of Petitioner's federal rights on April 21, 2026. The Petition seeks, inter alia, immediate release.

///

///

On May 20, 2026, Respondents filed "Respondents' Response to Petition for Writ of Habeas Corpus" ("the Response"). The Response states: "Respondents are not presenting an opposition argument at this time." Petitioner did not file a Reply within the allotted time.[1]

Based on the facts alleged in the Petition, and in view of Respondents' failure to oppose the Petition, the Magistrate Judge recommends that Judgment be entered ordering Respondents to release Petitioner (A 43066811) from detention immediately, subject to the previous conditions of supervision.[2]

DATED: June 3, 2026.

CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[1] Petitioner's newly retained counsel did file a copy of a document filed in action No. 26-2560-AS, which does not affect the disposition recommended herein.

[2] Petitioner has not justified any additional or different form of habeas relief.

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.

JS-6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LONG THANH LY,

Petitioner,

v.

D. MARIN, ETC., ET AL.,

Respondents.

No. ED CV 26-2485-SSS(E)

JUDGMENT

IT IS ADJUDGED that Respondents are ordered to release Petitioner (A 43066811) from detention immediately, subject to the previous conditions of supervision.

DATED: July 14, 2026

SUNSHINE SUZANNE SYKES
UNITED STATES DISTRICT JUDGE

# EXHIBIT F

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| VLADIMIR HAMBARDZUYMYAN,<br><br>Petitioner,<br><br>v.<br><br>TODD M. LYONS, et al.,<br><br>Respondents. | Case No. 5:26-cv-02509-DTB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

**I.**

**PROCEDURAL HISTORY**

On May 11, 2026, petitioner ("Petitioner"), through counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") (Docket No. 3 at 1-12)[1] with three attached exhibits (id. at 13-59). The Petition alleges the following grounds for habeas relief: (1) "Habeas Corpus – Unconstitutional Civil Detention;" (2) "Violation of Fifth Amendment Procedural Due Process;" (3)

[1] For the parties' pleadings, the Court cites to the CM/ECF pagination at the top of each page.

"Violation of Substantive Due Process;" and (4) "All Writs Act – Preservation of Jurisdiction." (Petition at 10-12).

On May 19, 2026 (pursuant to General Order 26-05's expedited briefing schedule, see Docket No. 6), Respondents filed an Answer to the Petition ("Answer") (Docket No. 9), with two attached exhibits (Docket No. 9-1).

On May 22, Petitioner filed a Reply.

Thus, this matter is now ready for decision. For the reasons set forth below, the Court grants the Petition.

## II.

## BACKGROUND

Petitioner is a 39 or 40 year-old native and citizen of Armenia. (Petition at 2, 5-6, 15). On or about February 23, 2021, Petitioner and his son entered the United States. (Id.; see id. at 19 (the Notice to Appear states that Petitioner entered through the Calexico Port of Entry on February 17, 2021)). At the time of entry, Petitioner was detained near the border for approximately six days and was released into the community with a temporary ankle monitor (which was later removed based on Petitioner's demonstrated compliance). (Id. at 3, 6-7,16).

On an unspecified date (following entry), Petitioner and his son pursued asylum-related relief through the United States Citizenship and Immigration Services (USCIS). (Id. at 2, 6, 16).[2] On December 25, 2022, Petitioner's wife and daughters entered the United States. (Id. at 3).

For years, Petitioner, a married father of three children under 18 years of age, resided peacefully within the community, complied with his immigration obligations, remained available to immigration authorities, and attended appointments and check-ins with Immigration and Customs Enforcement ("ICE").

[2] The status of Petitioner's attempted asylum-related relief is unknown.

(Id. at 3, 7, 16).[3] Petitioner worked lawfully pursuant to employment authorization and supported his family by driving for Uber. (Id. at 3, 7, 17). Petitioner has substantial community ties, and he does not present a danger to the community or a flight risk. (Id. at 8).

On May 5, 2026, when Petitioner appeared for a routine, scheduled check-in, he was detained by ICE. (Id. at 3, 7, 16). On May 12, 2025, the Department of Homeland Security issued Petitioner a Notice to Appear, charging Petitioner with removability under Immigration and Nationality Act § 212(a)(7)(A)(i)(I) based on his being an immigrant who, at the time of application for admission into the United States, was not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document. (Id. at 2, 6, 15, 19-22).

Petitioner is currently detained at Desert View Annex Detention Facility. (Id. at 2, 4, 6, 16).

## III.

## LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).

---

[3] In the Answer, Respondents assert that Petitioner had "multiple violations of his release conditions, including a recent arrest for Disorderly Conduct: Intoxicated with Drugs/Alcohol." (Answer at 2, 5, citing Docket No. 9-1 at 3-6 [Record of Deportable/Inadmissible Alien]). Since Respondents do not state (or provide evidence of) Petitioner's release conditions, the Court is unable to find that Petitioner violated his release conditions.

Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

## IV.

## DISCUSSION

### A. Petitioner's Second Claim Warrants Habeas Relief.

As noted above, the second claim in the Petition alleges that Petitioner's detention violates his right to procedural due process under the Fifth Amendment. (Petition at 10-11; see Reply at 2-3).

#### 1. Procedural Due Process.

The Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V. All persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," are entitled to protection under this provision of the Constitution. Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." Id. at 690; see also United States v. Salerno, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited

/ / /

/ / /

exception.”). “Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.” Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases).

Generally, the Due Process Clause “requires some kind of a hearing *before* the State deprives a person of liberty or property.” Zinermon v. Burch, 494 U.S. 113, 127 (1990) (emphasis in original). In Mathews v. Eldride, 424 U.S. 319 (1976), the Supreme Court established three factors for a court to consider for purposes of determining what process is constitutionally sufficient to protect a liberty interest: The private interest that will be affected by the official action; the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Id. at 335; see Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying Mathews to due process challenge to immigration detention, and noting that “Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context”); López v. Wofford, Case No. 1:25-cv-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) (collecting cases extending Mathews “to the context of immigration detention”).

Thus, the Court considers the Mathews factors as applied to Petitioner’s claim.

/ / /

/ / /

/ / /

a. Private Interest

Petitioner has resided in the United States for more than five years following his initial contact and release by immigration officials. During that time, he has lived peacefully within the community, he has developed community ties, he has worked lawfully, and he has complied with his immigration obligations. (Petition at 3, 7-8, 16-17). He sought asylum-related relief. (Id. at 2, 6, 16).

Accordingly, Petitioner's liberty interest in remaining out of custody is protected under the Due Process Clause. See e.g., Cruz v. Lyons, Case No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *3 (C.D. Cal, Nov. 6, 2025) (finding the petitioner had a protectable liberty interest in remaining on supervised immigration release); C.A.R.V. v. Wofford, Case No. 1:25-CV-01395 JLT SKO, 2025 WL 3059549, at *10 (E.D. Cal. Nov. 1, 2025) (finding the petitioner had a constitutionally protected liberty interest in remaining out of ICE custody based on the "approximately four years on parole" preceding his re-detention).

Pursuant to the holding in Mathews, Petitioner should have been afforded a hearing prior to being detained. Petitioner has a substantial private interest in remaining free from detention, living in his home, engaging in lawful employment and generally participating in the community, all while out of custody. See C.A.R.V., 2025 WL 3059549, at *10 ("As to private interest, during his approximately four years on parole, C.A.R.V. obtained permission to work, pursued gainful employment, and built a relationship with his fiancé and many others in his community. . . . Petitioner has a substantial private interest in being out of custody and his detention denies him that liberty interest."); Pinchi, 792 F. Supp. 3d at 1034-35 ("Ms. Garro Pinchi justifiably relied on the government's implied promise in obtaining employment, taking on financial responsibility for her family members, and developing community relationships. The more than two

years that she has spent out of custody since ICE initially released her have only heightened her liberty interest in remaining out of detention."); Manzanarez v. Bondi, Case No. 1:25-cv-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding that petitioner had a private interest in remaining free from detention where "he was released on his own recognizance for over two years and complied with his [order of release on recognizance] conditions during that time"); López v. Wofford, Case No. 1:25-cv-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("Petitioner had been out of custody for nearly four years, and during that time, began a life in the United States, living with her partner and complying with the terms of her release. Her detention denies her that freedom.").

b. Risk of Erroneous Deprivation

The absence of a pre-detention hearing under these circumstances presents an unacceptable risk that the government would erroneously deprive Petitioner of his liberty interest. Civil immigration detention is permissible only to prevent flight or reduce the risk of danger to the community. Zadvydas, 533 U.S. at 690-91. The risk of a wrongful deprivation is particularly high here given the evidence that Petitioner was released in 2021. Respondent has not argued that Petitioner poses a risk of flight or a danger to the community. The government clearly did not believe Petitioner to be a risk of flight or a danger to the community when he was released in 2021; otherwise, the government would not have released him. Cf. e.g., Sequen v. Albarran, Case No. 25-cv-06487-PCP, 2025 WL 2935630, at *11 (N.D. Cal. Oct. 15, 2025); Singh v. Andrews, Case No. 1:25-cv-00801-KES-SKO (HC), 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025). As noted, ICE has *already determined* that Petitioner does not pose a flight risk or danger to his community when it released

him in 2021. There is no evidence indicating that this decision was erroneous or should otherwise be reassessed.

c. Government Interest

As for the third Mathews factor, "as many other courts have recognized, there is no meaningful countervailing Government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." Cruz, 2025 WL 4051129, at *4 (collecting cases). Here, the government has made a persuasive argument as to why Petitioner should be detained. Moreover, Petitioner was released in 2021. "[T]he Government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lessor bond or alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017). Moreover, "any fiscal or administrative burden on the additional procedural safeguard of a hearing before neutral adjudicator imposes on the Government is at most minimal'[.]" Sun v. Santa Cruz, Case No. 5:25-cv-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted). There are no facts in the instant record which would support a finding that the government's decision in 2021 to release Petitioner was made in error.

Therefore, the Court finds that there is a great risk that the lack of a pre-detention process – a hearing to determine whether Petitioner, in fact, presents a risk of flight or danger to the community – has resulted in his unnecessary detention. See Mourey v. Bowen, Case No. 5:25-cv-03262-WLH (DTB), 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026).

Respondents have offered no reason – much less any compelling reason – as to why the government should be able to detain Petitioner, who has developed a significant liberty interest during his more than four years on release, without first providing him with notice and opportunity for a hearing before a neutral adjudicator.

Accordingly, the Court concludes that the government's detention of Petitioner on May 12, 2025, without adequate pre-detention process, when he had previously been released and had been compliant with his release, violated his right to procedural due process under the Fifth Amendment.

Given the violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, Case No. 5:25-cv-KK-DSR, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's release on his prior conditions of release. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, Case No. 2:25-cv-8325-WLH-RAO, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

/ / /

/ / /

For the reasons set forth above, the Petition is GRANTED, and a writ shall issue ordering Petitioner's immediate release from custody.[4]

**V.**

**CONCLUSION**

IT THEREFORE IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Respondents to immediately release Petitioner from custody, subject to the same conditions (if any) that Petitioner was subject to at the time he was arrested and detained, and return all property confiscated from him during his arrest and processing into detention; (3) enjoining Respondents and their officers, agents, employees, attorneys and persons acting on their behalf in concert or in participation with them, from re-detaining Petitioner without notice and a pre-detention hearing before a neutral arbiter at which the government bears the burden of proving that Petitioner is a flight risk or danger to the community; and (4) Respondents shall file a status report within two (2) business days to confirm that Petitioner has been released from custody pursuant to this Order.

DATED: May 27, 2026

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE

---

[4] The Court's determination that Petitioner is entitled to habeas relief on the second claim alleged in the Petition renders it unnecessary for the Court to address the other claims alleged in the Petition.

## PROOF OF SERVICE

I am over the age of eighteen and not a party to this action. My business address is 440 Western Ave. Suite 205 Glendale, CA 91201.

On September 16, 2026, I served the foregoing **PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241** on the following by [CM/ECF electronic filing]:

U.S. Attorney's Office Central District of California
312 N. Spring Street
Los Angeles, CA 90012

Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

Facility Director Adelanto East ICE Processing Center
10400 Rancho Road
Adelanto, CA 92301

Secretary, U.S. Department of Homeland Security
2707 Martin Luther King Jr. Ave SE
Washington, DC 20528

Acting Director, U.S. Immigration and Customs Enforcement
500 12th Street SW
Washington, DC 20536

Field Office Director
ICE Enforcement and Removal Operations – Los Angeles
300 N. Los Angeles Street
Los Angeles, CA 90012

Warden, Adelanto East ICE Processing Center
10400 Rancho Road
Adelanto, CA 92301

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 16, 2026 at Glendale, CA.

/s/ *Sarah Hacobian*
Sarah Hacobian