UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:** 5:26-cv-05394-BFM **Date:** September 28, 2026

**Title:** *Artur Ishkhanyan v. Pam Bondi, et al.*

===========================================================

Present: The Honorable Brianna Fuller Mircheff, United States Magistrate Judge

| | |
|---|---|
| Christianna Howard | N/A |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Petitioner | Attorneys Present for Respondent |
| N/A | N/A |

**Proceedings: (In Chambers) Order Denying Petition (ECF 1)**

Petitioner Artur Ishkhanyan filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on September 16, 2026. (ECF 1 ("Pet.").) For the reasons stated below, the Petition is **denied**.

## I. Factual Background

Petitioner Artur Ishkhanyan alleges the following facts in this, his second § 2241 petition: Petitioner is a noncitizen who is currently detained in ICE custody within the Central District of California. (Pet. ¶ 3.) He resided in the United States for decades and became a lawful permanent resident as a child. (Pet. ¶¶ 33-34.) He has two adult United States citizen children. (Pet. ¶ 36.)

Petitioner has an in absentia removal order from 2003. *See* Order Denying Petition, ECF 11 at 2, *Ishkhanyan v. Bondi*, 5:26-cv-04118-BFM (August 3, 2026) (Order I). Though his removal order is dated, Petitioner was only recently transferred into ICE custody after serving a lengthy federal sentence. (Order I at 2.)

==============================================================

In the previous order, the Court concluded that Petitioner was still within the period where his detention was mandatory under § 1231(a)(2). (Order I at 3.) The Court thus denied the Petition without prejudice to the question being re-raised once Petitioner's detention was no longer mandatory. (Order I at 4.)

Petitioner filed this Petition on September 16, 2026, arguing that he is no longer within the period of mandatory detention, and that he should be immediately released—either because detention is no longer appropriate under § 1231(a) or because his continued detention violates the Constitution. (Pet. ¶¶ 194-204, 214-222.) Petitioner also re-raised the question of procedural due process in connection with the initial decision to take him into custody. (Pet. ¶¶ 207-213.) Respondents filed their Answer (ECF 7 ("Answer")), and Petitioner filed a reply (ECF 9 ("Reply")). The Petition is fully briefed and ready for decision.

## II. Analysis

Petitioner's most substantial claims concern whether he is properly detained under § 1231 and, if so, whether his continued detention violates the Constitution. (Pet. ¶¶ 194-213.) After careful review, the Court finds that relief is not warranted on these claims.

Section 1231 governs the Government's authority to detain non-citizens with final orders of removal. The statute provides that the Government "shall detain" noncitizens during the "removal period." 8 U.S.C. § 1231(a)(2)(A). The removal period is 90 days. *Id.* § 1231(a)(1)(A). Thereafter, the statute permits—but does not require—the detention of certain noncitizens found inadmissible or removable on specified grounds, "or who have been determined by the Attorney General to be a risk to the community or unlikely to comply with the

order of removal." *Id.* at § 1231(a)(6). Such individuals "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." *Id.*

The Supreme Court has construed Section 1231(a)(6) not to permit the "indefinite" detention of noncitizens, which would pose serious constitutional concerns. *Zadvydas v. Davis*, 533 U.S. 678, 690-96 (2001). The Court instead interpreted Section 1231(a)(6) to permit detention for purposes of effectuating removal only where such removal is "reasonably foreseeable." *Id.* at 699. The Court found it "practically necessary to recognize some presumptively reasonable period of detention," which it set at six months. *Id.* at 701. After the 6-month period, "once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief. *Id.*

Petitioner is beyond the 90-day period of mandatory detention but is still within the "presumptively reasonable" six-month period set by *Zadyvdas*: he has been detained for approximately 100 days. (Answer at 2.) Nevertheless, while Petitioner's detention is presumptively reasonable at this stage, the presumption of reasonableness is one that may be rebutted. *See Trinh v. Homan*, 466 F. Supp. 3d 1077, 1092 (C.D. Cal. 2020) ("At no point did the *Zadvydas* Court preclude a noncitizen from challenging their detention before the end of the presumptively reasonable six-month period."); *Hoang Trinh v. Homan*, 333 F. Supp. 3d 984, 994 (C.D. Cal. 2018) ("The Supreme Court in *Zadvydas* outlined a 'guide' for approaching these detention challenges . . . not a prohibition on claims challenging detention less than six months." (quoting *Zadvydas*, 533 U.S. at 700-01)); *Uzzhina v. Chestnut*, No. 1:25-cv-01594-DAD-SCR, 2025 WL 3458787, at *3 n.3 (E.D. Cal. Dec. 2, 2025) ("The fact that a

noncitizen has been held in-custody less than six months does not foreclose a claim that his or her detention is unlawful under *Zadvydas*."). The question, factually, is whether Petitioner has rebutted the presumption here.

The Court finds that he has not. Petitioner was born in the former Soviet Union and left that country when he was six years old. (Pet. ¶ 12.) He represents that he has never had a Russian passport. (Pet. ¶ 12.) DHS collected information from Petitioner for use in obtaining a travel document or passport on July 1, 2026. (ECF 7-2 at 5.) Respondents provide a letter, dated September 2, 2026, reflecting that DHS asked the Embassy of the Russian Federation to issue travel documents. (ECF 7-3 at 1.) Attached to that letter is the information form that contains Petitioner's biographical information, a fingerprint card, and several documents that are in Russian and thus of little use to the Court. (ECF 7-3 at 1-15.) There is a separate set of documents in the Armenian language, but as the Court cannot read them, it is unclear when or if they were sent or what they say. (ECF 7-2 at 6-12.) Together, however, they establish that DHS is working on removal to both Russia and Armenia.

The Court cannot say that these efforts are per se unlikely to be fruitful. Russia was on a list of noncooperative countries as of 2020. *See* Congressional Research Service, *Immigration: "Recalcitrant" Countries and the Use of Visa Sanctions to Encourage Cooperation with Alien Removals* (July 10, 2020). But Armenia is not on that same list, and indeed, there is at least one example of an individual similar to Petitioner who was successfully removed to Armenia.[1] *See* Status Report, ECF 44, *Ovsepian v. Bondi*, No. 5:25-cv-01937-MEMF (C.D. Cal. Oct. 9, 2025). If Petitioner's detention were not presumptively reasonable, vague assertions that DHS is pursuing paths to obtain travel documents might not be enough. *See Lapshin v. Bondi*, No. C25-2245-KKE, 2026 WL 71407, at *1-4 (W.D. Wash. Jan. 9, 2026) (rejecting similar showing concerning removal to Russia where petitioner had been detained for eight months post-removal

order). But at this juncture, it is not Respondents' burden to show that removal is likely to occur in the reasonably foreseeable future; it is Petitioner's burden to rebut the presumption that detention is reasonable.

Cases finding that presumption rebutted tend to recognize a formidable hurdle to such removal. *See Zheng v. Immigr. & Customs Enf't Field Off. Dir.*, No. 2:25-cv-02483-TLF, 2026 WL 850531, at *3 (W.D. Wash. Mar. 27, 2026) (petitioner was granted withholding of removal from his home country, and DHS had not identified a third country that would accept him); *Gaceran-Jimenez v. Marin*, No. 5:26-CV-01973-BFM, 2026 WL 2262177, at *2-4 (C.D. Cal. Aug. 5, 2026) (petitioner was ordered removed to Cuba and only identified third country appeared to be a nonstarter). Here, the Court has not been presented with evidence showing a hurdle of a similar nature.

The cases Petitioner cites are different in kind. *Lapshin*, as noted above, involved a longer period of post-removal-order detention. So did *Magomedov v. Bondi*, No. C26-0521-SKV, 2026 WL 747102, at *2 (W.D. Wash. Mar. 17, 2026), where, after eight months of post-removal order detention, DHS had not yet submitted a travel document request to Russia. Unlike these noncitizens, Petitioner's detention is still presumptively reasonable, and he thus faces a "much weightier burden" than a petitioner who has reached the six-month mark. *Sweid v. Cantu*, No. CV-25-03590-PHX-DWL, 2025 WL 3033655, at *4 (D. Ariz. Oct. 30, 2025).

In *Manoukyan v. Lyons*, the court ordered release based on a violation of the regulation concerning detention of a person who had been released on an OSUP fifteen years ago. No. 5:26-CV-00524-SPG-AJR, 2026 WL 712221, at *6-8 (C.D. Cal. Mar. 4, 2026). Notably, in that case, the government of Armenia had already investigated the petitioner's case and found that he did not meet the criteria for citizenship and told DHS that there was "no other option" for

==============================================================

obtaining Armenian travel documents—facts that obviously set that case on different footing than this one. *Id.* at *1. *Savinsky v. Bondi*, 2:26-cv-835-TL, 2026 WL 1191017, at *4-6, 10 (W.D. Wash. May 1, 2026) appears to have the similar features—it was a redetention claim, there was a prior failed attempt to obtain documents, and the petitioner had been detained post-removal order for more than six months.

For these reasons, Claims Two and Three are therefore denied. Petitioner's claim may strengthen as post-removal order detention continues. A showing that suffices during the first 180 days of detention may become inadequate after that point. Dismissal is thus, again, without prejudice.

Petitioner remaining claim is a rehash from his first petition. He argues that his detention without pre-deprivation process violates due process and he asks for release. (Pet. ¶¶ 207-213.) For the reasons explained in the prior order, that claim is denied; his detention at the time he was transferred into ICE custody was mandatory and as such, additional procedural protections were not warranted. (Order I at 2-3.)

## III. Conclusion

Accordingly, the Petition is denied without prejudice. Judgment shall be entered accordingly.

**IT IS SO ORDERED**

cc: Counsel of Record

Initials of Preparer: ch